Rodríguez, Peticionario y Apelante, *v.* Miller, Comisionado de Instrucción, Demandado y Apelado.

Apelación procedente de la Corte de Distrito de Mayagüez en un recurso sobre *mandamus.*

No. 1434.—Resuelto en marzo 14, 1916.

Ley Orgánica—Leyes Insulares—Inclusión de Más de una Materia u Objeto en una Sola Ley—Constituciones de Estados o Territorios.—La Ley Orgánica no establece restricción alguna en la legislación insular en cuanto a que prohiba la inclusión de más de una materia u objeto en una sola ley o que exija que todas las materias u objetos que contenga sean expresadas en el título. Dicha Ley Orgánica no trajo consigo a esta isla, o todos los preceptos de cada una de las constituciones de Estados, o algún precepto de cualquier constitución de Estado. Los casos en que están envueltas las facultades de las Legislaturas respecto al particular, invariablemente descansan por completo en los preceptos constitucionales del propio Estado o Territorio.

Leyes Ultra Vires—Entrega de Libros de Texto a los Alumnos de las Escuelas Públicas—Presupuestos Escolares—Facultades de la Asamblea Legislativa.—No es *ultra vires* y nula la ley número 39 de 1915, sobre presupuestos, en tanto en cuanto trata de regular la entrega de libros de texto a los alumnos en las escuelas públicas, por haber comprendido más de una materia u objeto o por no haber expresado todas sus materias u objetos en su título sino que está claramente comprendida esta legislación en las facultades de la Asamblea Legislativa.

Escuelas Públicas—Venta de Libros a los Alumnos—Comisionado de Instrucción—Ley Orgánica.—En el texto de la ley número 39 de 1915, sobre presupuestos, se autoriza la venta de libros a los alumnos en las altas escuelas y de continuación, y no existe en ella indicación alguna de venta directa en persona por el Comisionado de Instrucción, ni hay nada que esté en conflicto con el artículo 22 de la Ley Orgánica, sino que dicha ley está además en completa harmonía con el artículo 25 de la referida Ley Orgánica.

Constitución de Puerto Rico—Ley Orgánica—Código Civil—Interpretación de Ley.—La Ley Orgánica y no el Código Civil es la Constitución de Puerto

Rico, siendo la única consideración racional del artículo 3 de dicho Código Civil, simplemente, proclamar en forma estatutoria un principio corriente y cardinal bien reconocido de interpretación de estatutos.

ESCUELAS PÚBLICAS—ALTAS ESCUELAS Y DE CONTINUACIÓN—EFECTO RETROACTIVO DE LAS LEYES—DERECHOS ADQUIRIDOS.—La ley número 39 de 1915 no es retroactiva en su forma ni priva de ningún derecho adquirido, por cuanto no requiere que los alumnos de las altas escuelas o de continuación paguen los libros usados en años anteriores, sino aquellos que han de usar en lo sucesivo.

DERECHOS ADQUIRIDOS—ESPERANZA O EXPECTACIÓN.—Es un principio elemental de que la mera esperanza o expectación de que una ley seguirá en su forma original no puede ser considerada como un derecho adquirido.

INTERPRETACIÓN DE LEY—LEY ESCOLAR COMPILADA—EDAD DE LOS ALUMNOS—INTENCIÓN DEL LEGISLADOR.—No es la intención de la Ley Escolar Compilada en su artículo 2 hacer las instituciones de enseñanza superior, en general, más accesible sin gasto para todos los que soliciten admisión que los grados inferiores del sistema ordinario de enseñanza o el conferir a alguna o a todas las personas, sin tener en cuenta su edad o condiciones intelectuales y morales, o a pesar de su negativa a cumplir con el precepto terminante del estatuto respecto a la adquisición de los libros de texto y enseres que son necesarios, o ante las condiciones que claramente pueden presentarse, un derecho absoluto e ilimitado a ser matriculado inmediatamente y sin lugar u oportunidad para que las autoridades escolares puedan ejercitar discreción alguna con respecto a cualquiera de tales ''instituciones de enseñanza superior.''

MANDAMUS—ENTREGA DE LIBROS GRATIS A LOS ALUMNOS DE LAS ALTAS ESCUELAS Y DE CONTINUACIÓN—COMISIONADO DE INSTRUCCIÓN—DEBER MINISTERIAL.— La ley No. 39 de 1915 en tanto en cuanto sea imperativa prohibe en absoluto al Comisionado de Instrucción la entrega gratis de libros de texto y enseres a los alumnos de las altas escuelas y de continuación, y en tanto sea directiva o permita alguna excepción, ello no es materia que pueda servir de base a un procedimiento de *mandamus,* por cuanto no existe un claro deber ministerial sobre el particular.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. José Sabater.*

Abogados del apelado: *Sres. Howard L. Kern, Attorney General, y Earl T. Fiddler, Oficial Jurídico.*

EL JUEZ ASOCIADO SR. HUTCHISON, emitió la opinión del tribunal.

El presente es un recurso de apelación interpuesto contra la sentencia dictada por la Corte de Distrito de Mayagüez negándose a expedir un auto de *mandamus* ordenando al Comisionado de Educación suministre gratuitamente libros de texto y enseres al hijo del peticionario y admitirle como alumno de la Alta Escuela de Mayagüez.

Se alega en sustancia en la solicitud que el hijo del peti-

cionario tenía diez y ocho años de edad, y había terminado con éxito su primer año en la alta escuela; que había solicitado del principal de la Alta Escuela de Mayagüez su inscripción como estudiante en el curso de 1915–1916, así como que le fueran suministrados y entregados los libros de texto y enseres necesarios, y el principal de dicha alta escuela rehusó inscribirlo como tal estudiante de la alta escuela o a proporcionarle los libros y enseres libre de derechos.

Se formularon excepciones previas a dicha solicitud, entre otros fundamentos, porque la petición no expresaba hechos suficientes para determinar una causa de acción, por las razones alegadas en los cinco motivos que sirven de base al segundo fundamento de excepción y que no es preciso repetir en sus detalles.

La corte inferior declaró con lugar estas excepciones por las razones consignadas en su opinión emitida por escrito que aparece en los autos, pero sin haber concedido permiso o prórroga para hacer enmiendas, habiendo sido registrada entonces la sentencia apelada a solicitud del peticionario.

La cuestión fundamental envuelta en este caso parece ser tan sencilla y libre de dudas, que la resolveremos en seguida sin entrar en una discusión innecesaria y fastidiosa de la resolución que en primer término se alega como errónea, o de otras varias cuestiones más o menos interesantes que han sido discutidas en los alegatos presentados a este tribunal. La ley titulada "Ley fijando el presupuesto de los gastos necesarios para el sostenimiento del Gobierno de Puerto Rico, en el año económico que terminará en treinta de junio de 1916, y para otros fines," aprobada en marzo 11, 1915, Leyes de 1915, página 91, bajo el título "Oficina del Comisionado de Instrucción," contiene el siguiente precepto y disposiciones (*provisos*);

"*Libros de texto y material de escuela:* Para compra de libros de texto, enseres y materiales de escuela, y para flete y seguro de los mismos, $50,000; en junto, $50,000.

"*Disponiéndose,* que se les facilitarán los libros de texto y enseres

gratis a los alumnos matriculados en los grados primero al octavo,
inclusive, y el Comisionado de Instrucción podrá autorizar la venta
de libros de texto a los alumnos según las reglas y reglamentos hechos
por él; Y *disponiéndose, además,* que después del primero de julio
de 1915, los alumnos de todas las altas escuelas y escuelas de conti-
nuación comprarán por su cuenta los libros de texto y enseres, suje-
tándose a las reglas y reglamentos hechos por el Comisionado de
Instrucción.''

El peticionario no niega que la disposición que acaba de
citarse expresamente prohibe suministrar libros de texto y
enseres a los alumnos de la alta escuela libre de gastos pero
insiste en el hecho de que la ley es *ultra vires,* y nula, en tanto
en cuanto trata de regular cuestiones de las escuelas públi-
cas en una ley de presupuesto sin hacer mención del parti-
cular en el título.  La teoría es, para ser breve, algo forzada
y está sobrecargada de fuegos fatuos (*ignis fatuus*).

En apoyo de la amplia proposición de que ''La jurispru-
dencia americana condena y prohibe esta clase de legisla-
ción,'' el apelante hace citas de la obra de Cooley, sobre
Limitaciones Constitucionales, de la opinión de la Corte Su-
prema emitida por el Juez Sr. Field, en el caso de *Louisiana*
v. *Pilsbury,* 105 U. S. 278, y del volumen 36 de Cyc., página
1045.  El argumento es como sigue:

''Es cierto que la anterior jurisprudencia ha sido basada en pres-
cripciones constitucionales existentes en casi todos los Estados de
la Unión Americana, pero no es menos cierto que al promulgarse
el Acta Foraker estableciendo el Gobierno Civil de Puerto Rico, im-
plantó en esta isla un sistema de Gobierno Civil fundado en los mis-
mos principios sanos y democráticos en que descansan los gobiernos
de los diferentes Estados y Territorios de la Unión.  Y si esas reglas
que tienen un objetivo moral y saludable en los Estados son allí apli-
cadas por los tribunales de justicia para la defensa del pueblo, no
hay motivo ninguno para suponer que en esta isla no tengan la misma
aplicación para producir ese mismo efecto moral y saludable en nues-
tro sistema de gobierno, bajo la soberanía democrática del pueblo
americano.''

Es un hecho que aparece con bastante claridad, que el

apelante no se basa en ningún precepto constitucional que prohiba la inclusión de más de una materia o asunto en una sola ley, o que exija que todas las materias que de tal modo han sido incluídas habrán de ser mencionadas en el título; y resulta asimismo aparente que nuestra Ley Organica no establece tal restricción en la legislación insular. No es necesario que demostremos la proposición evidente por sí misma de que la Ley Foraker no trajo consigo a esta isla o todos los preceptos de cada una de las constituciones de Estados, o algún precepto de cualquier constitución de Estado.

Los casos en que están envueltas las facultades de las legislaturas de un Estado o Territorio en lo que respecta al particular invariablemente descansan por completo en los preceptos constitucionales del propio Estado o Territorio. Será bastante para sostener esta proposición con que hagamos un examen de las autoridades que ya han sido citadas por el apelante. El Juez Cooley, al usar el lenguaje que cita el apelante, estaba discutiendo las prescripciones de constituciones de Estado. El caso de *Commonwealth* v. *Barnett,* 199 Pa. St. 161, invocado por el apelante traza la historia del precepto constitucional en Pennsylvania, y al hacer esto insiste fuertemente en la influencia dominante de un precepto constitucional específico, en marcado contraste con las condiciones reseñadas y la ley aplicable a las mismas como se han descrito y expresado que existían con anterioridad a las varias enmiendas sucesivas introducidas a la constitución de Estado mencionada en la opinión de la corte. En el caso de *Louisiana* v. *Pilsbury,* 105 U. S. 278, en el cual también se funda el apelante, la Corte Suprema basó su sentencia en el precepto contenido en la Constitución de Louisiana relativo a que "toda ley decretada por la legislatura comprenderá sólo una materia y ésta será especificada en el título." La corte incidentalmente se expresó en estos términos: "Pero no se intentó prohibir la unión de materias distintas en el mismo proyecto, si éstas guardan analogía con la materia general indicada en su título * * *. De modo

que, aquí bajo el título de la ley de que se trata, podrían decretarse disposiciones, que no se refieran simplemente a la unión de distintos municipios y el gobierno del Estado, sino a todos los diversos particulares a que habría de conducir la administración general de sus asuntos.''

Si fuera necesario en el presente caso podría sostenerse el estatuto por la razón sugerida en el texto que acaba de citarse, puesto que las disposiciones (*provisos*) que han sido atacadas por el apelante apenas si pueden ser consideradas como ajenas por completo a la materia referente a presupuestos escolares. Pero la legislación en cuestión está tan claramente comprendida en las facultades de la Asamblea, que no es preciso considerar el criterio seguido por la Corte Suprema en el caso de Pilsbury, si bien dicho caso está sostenido por suficientes autoridades.

El fin principal de la teoría sostenida por el apelante es que este tribunal declare que es nulo el estatuto por ser contrario a un supuesto principio fundamental de la jurisprudencia americana. Admitiendo, en pro del argumento, la existencia independiente de tal principio general en abstracto, y sin tener en cuenta ningún precepto constitucional específico, hacer lo que ahora se nos pide que hagamos contra la fuerza del mismo estatuto equivaldría, sin embargo, a la tentativa más arbitraria, indiscutible y sin precedentes de ningún género a legislar por parte del poder judicial y nos colocaría tan fuera de las atribuciones de este tribunal, como cualquier ley que pueda uno imaginarse pudiera excederse de las facultades conferidas por la ley a la Asamblea Legislativa. Si cualquier corte en alguna ocasión ha declarado que un estatuto es anti-constitucional basándose para ello en principios generales de ley en un sentido abstracto, porque dicho estatuto comprendía más de una materia u objeto, o porque la materia u objeto no fué expresada en el título, a falta de cualquier precepto constitucional que prohiba esa clase de legislación, sin duda que sería interesante leer el razonamiento por el cual llegó a su conclusión, pero no sabe-

mos que exista semejante decisión. Véase a Cooley, sobre Limitaciones Constitucionales (7ª. Ed.) Cap. VII, que trata de los casos en que un precepto legislativo puede ser declarado anticonstitucional, p. 227 *et seq.*

Pero el apelante también sostiene que de acuerdo con la Ley Orgánica el Comisionado de Educación no tiene la facultad ni el derecho de reunir fondos ó de convertirse en guardián de los mismos, y, por tanto, que no puede vender libros a los alumnos; que el artículo 22 de la Ley Foraker determina expresamente quién habrá de cobrar y conservar los fondos del Gobierno, y que la Asamblea Legislativa, por virtud del artículo 80 del Código Político, ha corroborado y promulgado este precepto; y además que tampoco se determina la aplicación que ha de darse por el Comisionado de Educación a los dineros que produzca la venta de esos libros.

El texto de la ley de 1915, citado anteriormente, expresa que ''el Comisionado de Instrucción podrá *autorizar* la venta de libros de texto a los alumnos *según las reglas y reglamentos hechos por él.''* No existe ninguna indicación de una venta directa por el Comisionado de Instrucción en persona. No existe nada en la ley que esté necesariamente en conflicto con el artículo 22 de. la Ley Orgánica, el cual dispone que el Tesorero de Puerto Rico recaudará y custodiará los fondos públicos desembolsando las cantidades asignadas por la ley, contra libramientos firmados por el contador y refrendados por el Gobernador, o con el artículo 80 del Código Político que prescribe que

''el Tesorero recibirá y guardará todas las rentas del Gobierno Insular, sea cual fuere su procedencia, todos los caudales pertenecientes al Pueblo de Puerto Rico, y todos los fondos bajo custodia y depósitos especiales, llevando cuenta debidamente detallada de los mismos en libros permanentes, donde se asentarán todos estos ingresos y depósitos, bajo encabezamientos apropiados, con los nombres de los agentes, funcionarios y personas que los ingresen y fechas correspondientes.''

La ley de 1915, no dispone en particular la forma en que

la venta de libros ha de ser autorizada por el Comisionado de Educación ni contiene la más remota indicación de que pueda seguirse cualquier método ilegal o irregular al efectuar dicha venta. Por el contrario, dicha ley está en completa armonía con el artículo 25 de la Ley Orgánica, el cual prescribe lo siguiente:

"Que el Comisionado de Instrucción vigilará la instrucción pública en toda la isla, y todo desembolso, por cuenta de la misma deberá ser aprobado por él; y llenará las demás obligaciones que prescriben las leyes　*　*　*."

La cuestión es demasiado baladí para merecer seria consideración.

Otra de las alegaciones del apelante acerca de este aspecto del caso, es que la ley de 1915, es de carácter retroactivo y por tanto nula. Se alega que un alumno que ha recibido libros en el primer año de alta escuela ha adquirido el derecho a los libros de texto y enseres durante todo el curso de la alta escuela y, por tanto, que el estatuto perjudica un derecho adquirido al amparo de una legislación anterior. El artículo 3 del Código Civil que ha sido citado por el apelante dispone, en cuanto al particular, que "las leyes no tendrán efecto retroactivo si no dispusieren expresamente lo contrario," y que "en ningún caso podrá el efecto retroactivo de una ley perjudicar los derechos adquiridos al amparo de una legislación anterior." La Ley Orgánica y no el Código Civil es nuestra constitución, y la Asamblea Legislativa se encontraba tan libre y desembarazada en el ejercicio de sus facultades legislativas en su sesión de 1915, como lo estaba en el año 1902, al adoptar el Código Civil Revisado. Ni fué la intención de ese cuerpo al celebrar su segunda sesión en 1902 y aprobar el artículo 3, u otro cualquiera del Código Civil, atar de manos a todas las demás asambleas sucesivas, ni hubiera podido realizar ese fin si así lo hubiera deseado. La única consideración racional del artículo 3 del Código Civil es que dicho artículo simplemente proclama en forma

estatutoria un principio corriente y cardinal bien reconocido
de interpretación de estatutos.

Pero aun cuándo la regla según ha sido expuesta en el
Código Civil pudiera ser considerada como que en algún sen-
tido es una limitación constitucional sobre el poder legisla-
tivo, sin embargo, la ley de 1915 ni es retroactiva en su forma
ni priva al peticionario ni a nadie de ningún derecho adqui-
rido.  No requiere que los alumnos paguen los libros usados
en años anteriores, sino aquellos que han de usar en lo suce-
sivo.  Sería tan justo como legal decir que un alumno adqui-
rió un derecho permanente e inalienable a los enseres de
escuelas libre de costo por todo el curso de la escuela pública
por razón de haberse matriculado en el primer grado, o en
cuanto a eso por haber nacido antes de decretarse la ley de
1915, como lo sería decir que tal derecho había sido adqui-
rido por matrícula antes de 1915 en una alta escuela.  En
uno u otro caso no podía haber más que una simple espe-
ranza basada en que la ley seguiría en su forma original;
y que esa mera expectativa jamás puede ser considerada
como un derecho adquirido es un principio sumamente ele-
mental.  Cooley, sobre Limitaciones Constitucionales, pág.
511.  El absurdo de la proposición es demasiado palpable
para ser discutido.

No entendemos que el peticionario insiste en el derecho
a matricularse independientemente del pretendido derecho a
enseres libre de costo, pero como la corte de distrito ha mani-
festado que aparece de la faz de la solicitud que el peticio-
nario pasa de la edad, y el apelante al discutir la conclusión
a que llega la corte inferior por esta circunstancias, insiste
en el hecho de que el límite de la edad fijado en el estatuto
es aplicable solamente a las "escuelas ordinarias" y no a
las altas escuelas, parece procedente que hagamos una ligera
referencia a esta cuestión.

El artículo 2 de la Ley Escolar Compilada dice lo si-
guiente:

"Sección 2.—Se autoriza y ordena por la presente al Comisionado de Instrucción para establecer y sostener en Puerto Rico un sistema de escuelas públicas gratuitas que tendrá por objeto proveer a los niños de escuela, comprendidos entre los cinco y diez años de edad, de una instrucción liberal; para establecer instituciones de enseñanza superior, tales como colegios, universidades, altas escuelas, normales, industriales y mecánicas; para establecer todos aquellos centros educativos que dicho Comisionado juzgare necesarios y expedientes para mejorar el desarrollo de la instrucción en la isla. En adición a las escuelas rurales y graduadas que constituirán el sistema ordinario de enseñanza, se autoriza y ordena por la presente al citado Comisionado para establecer y dirigir, en la medida que los recursos puestos a su disposición se lo permitan, aquellas escuelas especiales que juzgare necesarias para las necesidades de la enseñanza, tales como escuelas de párvulos, (*kindergartens*) nocturnas, de agricultura, profesionales y comerciales, y escuelas en establecimientos penales y de caridad, públicas o particulares, y donde las mismas puedan sostenerse en harmonía con el sistema de escuelas públicas y con los requisitos y necesidades comunes a tales establecimientos. *Disponiéndose,* que entre los alumnos de dichas escuelas especiales podrán ser incluídos otros además de los que estén en edad de asistir a las escuelas. El Comisionado de Instrucción, el subcomisionado, el secretario del departamento y el inspector general podrán tomar juramentos y declaraciones juradas concernientes a cualquier asunto escolar."

Una contestación suficiente a la distinción que se ha sugerido en cuanto al particular es tal vez la contenida en la máxima legal *ubi lex non distinguit nec nos distinguere debemus.* Además, con respecto a las "escuelas especiales" autorizadas por el artículo a que acabamos de hacer referencia se "dispone expresamente que entre los alumnos de dichas escuelas especiales podrán ser incluídos otros además de los que estén en edad de asistir a las escuelas," mientras que no se hace tal excepción en cuanto a los "colegios, universidades, altas escuelas, normales, industriales y mecánicas" enumeradas en el párrafo anterior en la misma relación que la definición de "edad de asistir a la escuela." Además, si el argumento fuera bueno quedaría eliminada la alta escuela del "sistema de escuelas públicas gratuitas," de modo tan eficaz e inevitable que prescindiría del límite de la edad en el caso de un

alumno de la alta·escuela. Que jamás fué la intención de la ley hacer ''las instituciones de enseñanza superior'' a que se hace referencia en el párrafo citado en general más accesibles sin gasto para todos los que soliciten admisión que los grados inferiores del ''sistema ordinario de enseñanza,'' o el conferir a alguna o a todas las personas, sin tener en cuenta su edad o condiciones intelectuales y morales, o a pesar de su negativa a cumplir con el precepto terminante del estatuto respecto a la adquisición de los libros de texto y enseres que son necesarios, o ante las condiciones que claramente pueden presentarse, la verdadera existencia de alguna de las cuales, así como el estado de apiñamiento e insuficiente capacidad de nuestras escuelas en general y la falta de fondos necesarios para remediar la situación, es una cuestión del conocimiento judicial,—un derecho absoluto e ilimitado a ser matriculado inmediatamente y sin lugar u oportunidad para que las autoridades escolares quedan ejercitar discreción alguna con respecto a cualquiera de tales ''instituciones de enseñanza superior,'' parece ser tan claro que no es preciso discutirlo. La proposición se contradice a sí misma y cae por su propio peso con sólo enunciarla.

El texto de la ley de 1915 es demasiado claro para ser susceptible de interpretación. Sus preceptos siguen y se ajustan sustancialmente y constituyen una interpretación práctica contemporánea del artículo 2 de la Ley Escolar Compilada a que hemos hecho referencia. Pero aunque así no fuera, y en tanto en cuanto puede decirse que existe un verdadero conflicto, debe regir necesariamente la última expresión del deseo de la legislatura manifestada en términos tan inequívocos; y por absoluto e indiscutible que sea el derecho de un alumno que pasa de la edad de acuerdo con la ley anterior a que se le faciliten libros de texto y enseres en ''todas las altas escuelas y de continuación,'' a matricularse en ellas no obstante haber dejado de suministrarse al mismo el necesario equipo de escuela, ciertamente que tal derecho no

continuó existiendo después de estar en vigor el precepto legal de fecha más reciente.

No hay necesidad de discutir ahora el grado de discreción, si es que alguna tiene el Comisionado de Instrucción de acuerdo con la vigente ley. En tanto en cuanto el estatuto es imperativo en absoluto prohibe hacer lo que el peticionario quiere que ejecute el Comisionado. En tanto es directivo o permite alguna excepción posible, si queda sujeto a tal interpretación, entonces las circunstancias peculiares que podrían justificar que se hiciera dicha excepción, aun cuando hubieran sido alegadas, necesariamente constituirían materia que por propia que sea su consideración por las autoridades escolares, en ningún caso podrían servir de base a procedimientos de *mandamus,* no existiendo en absoluto algún indicio, por remoto que fuere, de un "claro deber ministerial" en cuanto al particular.

Debe confirmarse la sentencia dictada por la corte inferior.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf y Aldrey.

El Juez Asociado Sr. del Toro no intervino en la resolución de este caso.