JOSÉ MANUEL VÁZQUEZ, demandante y recurrente, *v.* HÉCTOR IVÁN MORALES, demandado y recurrido.

*Número:* R-83-377      *Resuelto:* 30 de noviembre de 1983

*Víctor J. Estrella Hernández* y *Juan J. Nolla Amado*, abogados del recurrente; *Maximiliano Trujillo González*, abogado del recurrido.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

El presente recurso se origina en el conflicto que genera la sucesión de leyes que rigen en tiempos distintos. La doctrina científica identifica y atiende este fenómeno bajo la rúbrica de *teoría del Derecho transitorio o intertemporal*. Castán, consciente de que es "sumamente delicada la formulación de principios abstractos y generales", la define "como el conjunto de reglas destinadas a determinar la eficacia de la ley en el tiempo, o, lo que es igual, a resolver los conflictos que pueden ocurrir entre la ley nueva y la anterior derogada por ella, adaptando los preceptos de la ley nueva a los estados de Derecho nacidos al amparo de la ley anterior". J. Castán Tobeñas, *Derecho civil español, común y foral*, 12ma ed., Madrid, Ed. Reus, 1982, T. I, Vol. I, págs. 613, 614.

## I

El 5 de abril de 1978 José M. Vázquez, en calidad de titular de una propiedad, y Héctor I. Morales, como arrendatario, suscribieron un contrato de arrendamiento de un

inmueble en que operaba una estación de gasolina al detal. Vencería el 16 de abril de 1983. Morales compensó al anterior arrendatario, Domingo Badillo, la inversión que éste tenía en dicha estación.

Transcurrieron los años. Al expirar el contrato, Morales formuló acción interdictal contra Vázquez con miras a impedir que le requiriera el desalojo y, en la alternativa, compelerlo a que le pagara el valor del negocio. Por su parte, Vázquez solicitó el desahucio.

El Tribunal Superior, Sala de Aguadilla, consolidó las acciones. Oportunamente desestimó el desahucio y declaró académico el interdicto. Concluyó que la Ley de Alquileres Razonables aplicaba y prorrogaba obligatoriamente el arrendamiento.

Mediante el trámite de mostrar causa, a solicitud de Vázquez, revisamos.

## II

En su versión original la Ley de Alquileres Razonables cubría el arrendamiento de estaciones de gasolina si el canon no excedía de $400 (17 L.P.R.A. sec. 181 *et seq.*). La Ley Núm. 14 de 10 de junio de 1965 amplió su cobertura al eliminar el criterio de cuantía. Sin embargo, con posterioridad, ese enfoque legislativo varió drásticamente. Mediante la Ley Núm. 155 de 20 de julio de *1979*, con vigencia inmediata, se excluyeron las estaciones de gasolina. Esta última enmienda respondió a que el método utilizado para calcular el canon a pagar en los arrendamientos de estaciones de gasolina tenía un impacto inflacionario contrario al interés público. En igual fecha, se aprobó la Ley Núm. 156 que autorizó a DACO a reglamentar la fijación de alquiler del negocio de ventas de gasolina al detal bajo disposiciones más flexibles.[1]

---

[1] Informe Conjunto para el Senado de la Comisión de Desarrollo Urbano y Vivienda y de la Comisión de Asuntos al Consumidor del P. de la C. 1074 y 1075

La tesis del arrendatario Morales, refrendada en la sentencia del tribunal de instancia, se funda en que tiene un *derecho adquirido* a la prórroga del contrato de arrendamiento por haber contratado durante el año 1978, época en la cual el estatuto así lo reconocía. 17 L.P.R.A. sec. 192. Para sostenerla dicho foro invocó el Art. 3 del Código Civil y los casos de *Luce & Co.* v. *Junta Salario Mínimo*, 62 D.P.R. 452, 470 (1943), y *López* v. *South P.R. Sugar Co.*, 62 D.P.R. 238, 242 (1943), respecto a que las leyes civiles de carácter sustantivo no tienen efecto retroactivo a menos que se disponga expresamente lo contrario, y en ningún caso perjudican derechos adquiridos. Erró.

### III

El Art. 3 reza:

> Las leyes no tendrán efecto retroactivo, si no dispusieren expresamente lo contrario.
> En ningún caso podrá el efecto retroactivo de una ley perjudicar los derechos adquiridos al amparo de una legislación anterior. 31 L.P.R.A. sec. 3.

El precepto cardinal de irretroactividad en materia de hermenéutica se inspira en la antigua "máxima de que *las leyes miran a lo porvenir*". Q. M. Scaevola, *Código Civil*, 6ta ed., Madrid, Ed. Reus, 1949, T. I, pág. 234. Sin embargo, es menester dejar sentado el marco conceptual dilatado de la expresión de "retroactividad". Como afirma Castán, "[p]uede hablarse de una retroactividad *de primer grado o débil*, que somete a su imperio las relaciones jurídicas nacidas antes, pero no las consecuencias ya consumadas, y una retroactividad de *segundo grado o fuerte*, que modifica o deja sin efecto hasta las consecuencias ya consumadas de hechos anteriores. Esta última es la más propia y verdadera retroactividad". Castán, *op. cit.*, págs. 613–614; J. Puig Brutau, *Introducción al Derecho Civil*, Barcelona, Ed. Bosch, 1981,

---

fechado 18 de junio de 1979. Además, véase el Informe de la Comisión de Asuntos al Consumidor de la Cámara, P. de la C. 1074 y 1075, de fecha 4 de junio de 1979.

pág. 184. La sentencia española núm. 24 del 12 de noviembre de 1958 distingue tres tipos de retroactividad: grado máximo o fuerte, grado medio, y grado mínimo o atenuado.

En apoyo del principio de irretroactividad se aducen tres fundamentos. Primero, la existencia de una política legislativa tendente a producir confianza y seguridad en los ciudadanos. Se admite "que no se puede exigir a los súbditos un comportamiento cuyas consecuencias legales no son previamente conocidas. Con lo que evita la arbitrariedad del legislador y se da la seguridad a los ciudadanos de que no sufrirán perjuicio si ajustan sus actos a la ley establecida en el momento de su realización". M. Albaladejo, *Comentarios al Código Civil y compilaciones forales*, Madrid, Ed. Rev. de Derecho Privado, 1978, T. I, pág. 75. Segundo, se reconoce una justificación de moral humana que descansa en que "la libertad individual autoriza a los ciudadanos para poder realizar los actos no prohibidos por la norma y a moverse dentro de su margen". F. Puig Peña, *Compendio de Derecho Civil Español*, 3ra ed., Madrid, Eds. Pirámide, 1976, T. I, Parte General, pág. 125. Y tercero, "[u]na profunda corriente de psicología colectiva ha abonado este modo de pensar: *las leyes deben mirar al porvenir y no al pasado*, disciplinando sólo las relaciones jurídicas que caen bajo su égida temporal". Puig Peña, *op. cit.*, pág. 124.

Ahora bien, el dilema que en la práctica conlleva la aplicabilidad absoluta del principio de irretroactividad lo expone Albaladejo así: "Pero la retroactividad es en muchas ocasiones indispensable y es precisamente un medio de transformación y progreso de situaciones pasadas que se consideren de conveniente remoción, y como la ley debe ser conveniente al lugar y al tiempo, no se puede renunciar de antemano a lo que es un instrumento para esa necesaria evolución cual acontece con la predicha retroactividad." *Op. cit.*, pág. 75.

Como veremos, nuestro sistema, producto del español, no está exento de tales complejidades. Aplicable al Puerto Rico contemporáneo son las siguientes palabras:

No es posible que el legislador ni el científico se acojan exclusivamente al principio de la retroactividad o al inverso de la irretroactividad de la ley. La absoluta retroactividad de ésta —advierte Simoncelli— sería la muerte de la seguridad y de la confianza jurídica; la absoluta irretroactividad sería la muerte del desenvolvimiento del Derecho. Mas ¿cómo armonizar ambas exigencias? ¿Qué leyes o relaciones deben regirse por cada uno de estos opuestos principios? ¿Es el de la retroactividad o, más bien, el de la irretroactividad, el que debe admitirse como regla general? Castán, *op. cit.* pág. 615; J. Manresa, *Comentarios al Código Civil español*, 7ma ed., Madrid, Inst. Ed. Reus, 1956, T. I, pág. 159.

Con esta perspectiva en mente, observamos que la glosa clasifica, agrupa y reduce las variadas modalidades doctrinales a cuatro: (1) derechos adquiridos; (2) hecho jurídico cumplido y consumado; (3) sobre la función de la nueva ley; y (4) orientaciones modernas. Examinémoslas.

*Teoría del derecho adquirido.*

Recoge el punto de vista clásico en esta materia. Como tal, domina el escenario y pensamiento en Europa y América Latina durante la promulgación de innumerables códigos en los siglos XVIII y XIX. Entre éstos figura el Código español que heredamos.

[L]a irretroactividad de la ley tiene su fundamento y su límite en el respeto de los derechos adquiridos. Distinguiendo el *derecho adquirido* de las *facultades legales* y de las simples *expectativas*, considera esta teoría que el primero ha de ser regulado por la ley antigua, mientras que las segundas, por la ley nueva, porque sólo el primero se puede decir que ha entrado definitivamente en el patrimonio de la persona. Por derechos adquiridos se entienden, según la fórmula de Gabba (que es quien ha dado su más completa elaboración a esta teoría), todos aquellos derechos que son consecuencia de un hecho idóneo a producirlos en virtud de la ley del tiempo en que el hecho ha sido realizado, y que han entrado inmediatamente a formar parte del patrimonio de la persona, aun cuando la ocasión de hacerlos valer se presente sólo bajo la ley nueva.

[P]arece aceptada por el Código civil (como lo revela su dispo-
sición transitoria preliminar), [y] es objeto hoy de muchas
impugnaciones. Se la critica: 1.° Por la dificultad de fijar el
concepto del derecho adquirido y su diferencia de las simples
expectativas. 2.° Porque la razón de la irretroactividad no es
la de proteger derechos subjetivos, sino objetivamente rela-
ciones jurídicas y hechos ya realizados, y aunque el respeto a
éstos implique casi siempre el de los derechos adquiridos por
ellos, no siempre sucede esto, y de un lado son protegidos
hechos jurídicos que no atribuyen derecho subjetivo (por
ejemplo, el testamento ya hecho, antes de que se abra la
sucesión), y de otro, derechos plenamente adquiridos caen por
el suelo (por ejemplo, los feudales, la esclavitud, etc.).
3.° Porque al concebir esta teoría el derecho adquirido como
un derecho privado patrimonial, restringe sus dominios, ex-
cluyendo de los mismos no sólo los derechos y relaciones
públicos (en los cuales tiene también imperio el principio de
la irretroactividad), sino aun las mismas relaciones jurídicas
de carácter personal. Castán, *op. cit.*, págs. 616–617. Véanse
además, J. Santos Briz, *Derecho Civil*, Madrid, Ed. Rev. de
Derecho Privado, 1978, T. I, pág. 228; Puig Peña, *op. cit.*,
págs. 127–128.

El precursor de esta doctrina fue Savigny y entre sus
exponentes principales están Zacharie, Zoepf, Wippermann,
Gabba, Laurent y Huc. La dificultad de esta teoría radica
en "que muchas veces no puede distinguirse el derecho ya
adquirido de lo que es mera expectativa de derecho". Santos
Briz, *op. cit.*, pág. 228.

*Teoría del hecho jurídico cumplido o consumado.*

El énfasis radica en los *hechos*, los cuales no pueden regu-
larse bajo la ley anterior.

Lo que importa indagar, según ellas, no es si un derecho ha
sido adquirido (*ius quaesitum*), sino si un hecho ha sido cum-
plido (*factum praeteritum*). Castán, *op. cit.*, pág. 617.

Según esta teoría, "la nueva ley en cuanto contiene otra
regulación distinta de los hechos, no afecta a los hechos ya

cumplidos o consumados; será distinta la solución si la nueva ley regula diversamente el hecho, no en su esencia, sino en los efectos que pretende modificar o evitar en lo sucesivo". Santos Briz, *op. cit.*, pág. 229. Se inició en Alemania por Von Scheurl y ha sido aceptada por civilistas de la talla de Ferrara, Stolfi, Chironi y Vereilles Sommières. En su contra se aduce que esta teoría es de difícil aplicación a contratos de tracto sucesivo.

*Teoría sobre la función de la nueva ley.*

Esta tesis enfatiza la propia naturaleza de la nueva ley a base de distinguir entre las leyes favorables y las desfavorables. Aquéllas serán retroactivas, éstas no. Otra variante se funda en la clasificación entre leyes referentes al Derecho privado frente al Derecho público.

*Orientaciones modernas.*

La evolución del pensamiento contemporáneo, como respuesta ecléctica a las dificultades de formular y endosar principios absolutos y generales para disciplinar toda clase de conflicto y situación, rechaza el dogmatismo de las fórmulas doctrinales. El principio de irretroactividad, "[p]or su excesiva generalización y por su vaguedad . . . como precepto legislativo, no tiene más que un valor muy relativo". Roberto De Ruggiero, *Instituciones de Derecho Civil*, Madrid, Inst. Ed. Reus, 1979, T. I, pág. 172. Puig Peña recoge esta reciente vertiente:

> Ya Ruggiero, apartándose de las fórmulas doctrinales, inició una orientación moderna de la cuestión estableciendo que, en cada caso, el legislador deberá dejarse llevar por diversas consideraciones, de oportunidad, de conveniencia o de justicia. La mayor o menor eficacia de la ley nueva sobre el hecho anterior deberá depender de la finalidad que persiga, de la fuerza social que le empuje. En nuestra Patria también De Buen, siguiendo en parte esta orientación, se inclina por "evitar la adopción de criterios generales", sosteniendo que *de lege ferenda* es ésa la solución más correcta y la más eficaz desde el punto de vista de la práctica. Pues si bien, *prima*

*facie,* la irretroactividad de las leyes debe aceptarse, como basada en consideraciones de "utilidad y de conveniencia". Ello no puede ser establecido como un principio siempre absoluto. *Por esto el conceder o no conceder, en casos determinados, fuerza retroactiva a las leyes, es cuestión que ha de dejarse, en última instancia, "al tacto político del buen gobernante". Nosotros ampliamos esta tesis fijándonos no sólo en el legislador, sino en el Juez.* Éste deberá también tener en cuenta no los criterios doctrinales de carácter general que se han establecido, *sino consideraciones de justicia y de conveniencia, de acuerdo con el fin propio de la norma nueva y la naturaleza y características de la relación jurídica que tiene bajo su control y decisión.* O, lo que es lo mismo, que el problema de la retroactividad o irretroactividad de la ley debe resolverse siempre en orden a los principios generales de la interpretación, y en tal respecto deberán concurrir los elementos que la técnica exige para que aquélla se lleve a efecto. (Énfasis suplido.) *Op. cit.,* pág. 130.

De Castro expone:

Se han levantado pequeños, grandes y hasta monumentales sistemas dogmáticos sobre el alcance de la retroactividad. Todos adolecen de igual defecto en su mismo punto de partida: creer que el único método apto para determinar la eficacia temporal de una ley está en la calificación que obtengan dentro de una clasificación abstracta de tipos de normas, y *olvidar que los motores que determinan la fuerza retroactiva de una regla jurídica está en el contenido social y político de las disposiciones en contacto, en la voluntad reformadora o restauradora que determine su finalidad.* (Énfasis suplido.) F. De Castro, *Derecho Civil de España,* 2da ed., Madrid, Inst. de Estudios Políticos, 1949, T. I, págs. 640–641.

## IV

■ Nuestra doctrina jurisprudencial interpretativa del Art. 3 del Código Civil no ha endosado ciegamente ninguna de las teorías dogmáticas antes expuestas. Ha estado inspirada básicamente en la doctrina de derechos adquiridos, sin descartar la de los hechos consumados. Así ha sido también en España, cuya jurisprudencia "con gran sentido

realista coincide en partir del fin propuesto en la ley". De Castro, *op. cit.*, 1ra ed., pág. 559.

◼ Hemos resulto que no se le atribuye efecto retroactivo a una ley cuando el derecho invocado se origina en hechos realizados con posterioridad a su vigencia. *Aguilar v. Vázquez*, 6 D.P.R. 1, 9 (1904). También que la simple esperanza o expectativa de que una ley siga en su forma original jamás puede ser considerada como un derecho adquirido. *Rodríguez v. Miller*, 23 D.P.R. 594, 602 (1916).

◼ Ahora bien, la intención de la Asamblea Legislativa al darle efecto retroactivo a una ley —por ser la excepción— debe aparecer expresamente o surgir claramente del estatuto. *Hernández Usera, Ex Parte, y Enjuto, Int.*, 52 D.P.R. 120, 134 (1937). Así ocurre en este caso. Dada la naturaleza de la Ley Núm. 155 y su texto, es evidente que disponía efectos retroactivos: "No se aplicarán las disposiciones de esta ley . . . [a] las propiedades *usadas* en el negocio de venta de gasolina al detal."

◼ ¿Qué consecuencia tuvo la Ley Núm. 155 al excluir los negocios de venta de gasolina al detal del ámbito de la Ley de Alquileres Razonables sobre el contrato? Obviamente esta ley no podía darlo por terminado ni afectar las condiciones —derechos y obligaciones— expresamente pactadas por las partes. Tampoco hacer que llegara a feliz término el arrendamiento. Sin embargo, no podemos convenir con el tribunal de instancia en que al vencerse, su duración se extendía cinco (5) años más en virtud de la prórroga obligatoria dispuesta en la Ley de Alquileres Razonables. Al expirar el contrato el 16 de abril de 1983, no aplicaba el estatuto que reconocía esa prórroga *legal*. Sin dificultad alguna concluimos que esa prórroga era de carácter eventual, más bien una expectativa que dependía directamente de la ley y no la voluntad de las partes. Como atinadamente opina Santos Briz, "para que pueda hablarse de derechos adquiridos propiamente tales es necesario que se trate de situaciones subjetivas, cuya extensión y alcance

son determinados por un acto o negocio jurídico, *no direc-tamente por la ley*, que se limita a hacer posible la con-clusión de ese acto o negocio (un contrato, por ejemplo)". *Op. cit.*, pág. 228.

■ No podemos rubricar la tesis —revestida de interés público— de que contratos de arrendamiento sobre la industria de la gasolina puedan perpetuarse y prolongarse irrestrictamente a base de un estado de derecho inexistente. Se trata de una situación susceptible a la evolución y cam-bios legislativos. La ley simplemente gobierna los efectos futuros de unos derechos no adquiridos por las partes. No es de carácter retroactivo, pues no afecta los hechos acaecidos o consumados. Solamente surte efecto con posterioridad al nuevo estatuto, a saber, retirar de la Ley de Alquileres Razo-nables dicha relación y, por ende, la prórroga legal en los negocios de gasolina. Reiteramos, más que un derecho adquirido, el arrendatario Morales sólo tenía una expecta-tiva o esperanza de prorrogar el arrendamiento. Ello estaba basado en la vigencia de la ley, que en este extremo se modificó.

Observamos además que, de prosperar su contención, el nuevo estatuto nunca tendría vigencia. La prórroga legal, de naturaleza automática, operaría a menos que la relación arrendaticia se disolviera por otras razones. Esa continui-dad frustraría el interés legislativo. Propiciaría que subsis-tiera el mal que se intentó remediar.

En virtud de lo expuesto, *se dictará sentencia en que se revoque la del Tribunal Superior, Sala de Aguadilla, fechada 19 de julio de 1983 y se ordene la continuación de los trámites ante dicho foro.*

El Juez Presidente Señor Trías Monge concurre en el resultado sin opinión. El Juez Asociado Señor Díaz Cruz concurre ,en el resultado con la siguiente expresión: "Sólo puedo concurrir en el resultado porque se deja a la inter-pretación judicial, casuística, el reconocimiento del efecto retroactivo de las leyes, sin decir que revoca a *Warner*

*Lambert Co.* v. *Tribunal Superior,* 101 D.P.R. 378 (1973), que para su aplicación se remite al *contrato* y no a las prestaciones cumplidas; y que destaca como elemento de imprescindible ponderación la garantía constitucional contra el menoscabo de obligaciones contractuales. Art. II, Sec. 7, Constitución del E.L.A. Debió, además, distinguirse de *Sutcliff* v. *Olavarría Franco,* 105 D.P.R. 844, 847 (1977)."
El Juez Asociado Señor Torres Rigual no intervino.