**Juan Jose GARCIA, Plaintiff,**

v.

**AMERICAN AIRLINES, INC., Defendant.**

**Civ. No. 86–1550 (JP).**

United States District Court, D. Puerto Rico.

Oct. 7, 1987.

Ramón L. Walker Merino, Old San Juan, P.R., for plaintiff.

Pedro A. Delgado, O'Neill & Borges, Hato Rey, P.R., for defendant.

## OPINION AND ORDER

PIERAS, District Judge.

This is an employment termination action by plaintiff Juan José García ("García") against American Airlines, Inc. The complaint was filed on October 2, 1986. Diversity of citizenship jurisdiction is prayed upon 28 U.S.C. section 1332.

Plaintiff alleges American Airlines is liable in contract and tort for having retaliatorily discharged him from employment without just cause and in violation of contract and public policy. He claims to be entitled to, among other things, reinstatement, back pay and damages, including mental anguish and suffering, amounting to $1.5 million, plus interest, costs, and attorney's fees.

On January 20, 1987, American Airlines submitted a Motion to Dismiss and/or Summary Judgment, which plaintiff opposed. By Order of June 17, 1987, the Court denied defendant's motion. Defendant moved for reconsideration thereof, which

plaintiff opposed. Upon meeting with the parties on July 27, 1987, the Court ordered all dispositive motions submitted by August 31, 1987. On August 31, 1987, American Airlines filed a Motion for Summary Judgment. Plaintiff filed an opposition on September 9. The Motion for Reconsideration is DENIED; and for reasons that follow, the Motion for Summary Judgment is GRANTED.

Reduced to its essentials, the complaint alleges:

1. Plaintiff was hired as a ticket salesperson by defendant on December 19, 1981, and continued employment with defendant until his dismissal on November 14, 1985.

2. Plaintiff's annual compensation was $20,000.00, plus fringe benefits.

3. Plaintiff maintained his employment with defendant with the good-faith anticipation and belief that he would devote the remainder of his working life to such employment and remain there until retirement.

4. On November 14, 1985, defendant breached the employment contract between the parties by discharging plaintiff without cause. Defendant's acts constituted a breach of its contractually implied duty to terminate plaintiff in good faith and only for just cause.

5. Defendant's conduct in dismissing plaintiff was against public policy, insofar as it was a retaliatory measure because plaintiff served on various occasions as witness against defendant in administrative and judicial proceedings on behalf of individuals discharged by American Airlines.

6. Defendant's conduct against plaintiff was malicious, shocking, and in bad faith, making defendant liable to plaintiff under tort and contractual theories of compensation.

## Statement of Facts

After a thorough review of the entire record, including all the responsive pleadings, memoranda, affidavits, and other documents filed, this Court finds the following stipulated or uncontested facts.

1. Plaintiff was employed by American Airlines as a Ticket Sales Agent on December 19, 1981, and remained employed by American Airlines in said position until his dismissal on November 14, 1985. (Defendant's Statement of Material Facts, ¶ 1.)

2. Plaintiff received salary increases during employment and in December, 1984, he received a ticket award for good performance. (Initial Scheduling Conference (ISC) Order, ¶¶ I–3, I–4.)

3. Once, in 1982 or 1983, plaintiff appeared as a witness during a hearing in the company grievance procedure of Mr. Jorge Ratcliffe, another American Airlines employee. (ISC Order, ¶ I–6.

4. On April 27, 1984, plaintiff was issued a C–314 (notice of Infraction or Unsatisfactory Performance) for making mistakes in reservations and thereby contributing to loss of company earnings. The notice advised plaintiff that on April 8, 1984, he had authorized several reservations for various flights on April 20 and 21, all in the name of Ms. P. Batzel, another American Airlines employee. This violated accepted company procedure, which prevents agents from confirming more than one reservation per passenger. At the time, he was suspended for one day. (Defendant's Statement, ¶ 7.)

5. On April 3, 1985, García's Supervisor, Arielle De Delva, issued a C–314 for García's failure to follow established procedures concerning baggage check-in on January 20 and March 9, 1985. It also concerned failure to obtain passenger signature on fragile items and García's non-effective customer impacts. Customer impact refers to an evaluation that supervisors make on the contact between a ticket agent and a passenger during flight check-in procedures. At the time, García was advised that proper counseling had previously been conducted, but that no correction had been observed. Plaintiff was warned that further instances of poor job performance and/or violations of American Airlines Rules and Regulations could result in stronger disciplinary action, up to and including dismissal. (Defendant's Statement, ¶¶ 8, 9.)

6. García failed to follow proper company procedures in August and September, 1985, when he mishandled passengers' baggage and sent them to wrong locations. (Sworn Statement of Arielle De Delva, ¶ 15.)

7. In August, 1985, plaintiff received his yearly evaluation from supervisor De Delva. The evaluation covered the period July 1984–June 1985. The supervisor noted that García's overall performance had not been satisfactory. The evaluation stated that he had done a satisfactory job concerning sales, yet his work needed improvement in most areas. Specifically, the evaluation noted that he had been issued a C–314 for not following company procedures. Also, García needed improvement in the customer impact area and had failed to meet requirements relating to continuous training. (Exhibit 10, Defendant's Statement.) The performance evaluation given to García rated him as poor. (ISC Order, ¶ I–5.)

8. On August 8 and 12 and on September 3 and 8, 1985, plaintiff cashed checks from a passenger in violation of established procedures. The checks totaled $650.00. García did not offer a satisfactory explanation for his failure to follow established check-acceptance procedures, and specifically, his failure to require proper check acceptance identification such as credit card number, before cashing the checks. Supervisor De Delva considered García's performance as poor. Therefore, she issued a C–314 on October 1, 1985, suspending him for five days and warning him that further instances of poor performance would lead to dismissal. (Defendant's Statement, ¶ 13.)

9. On October 26, 1985, plaintiff was again counseled on his failure to follow proper check aceptance procedures after a check he had accepted did not contain the required information concerning the issuer's address, telephone number, approval code, or identification number, and the check later had been rejected by the bank. (Defendant's Statement, ¶ 14.)

10. On November 18, 1985, De Delva discharged García after he failed to follow proper reporting procedures for a ticket transaction involving an additional collection. In American Airlines parlance, this means that a ticket had been originally bought for a certain flight, the passenger had missed that flight, and he was updating the ticket in order to board another flight. García failed to report the sale of the ticket. (Defendant's Statement, ¶ 15.)

11. Plaintiff's supervisor, De Delva, decided to discharge him after his failure to follow additional-collection procedures, and after reviewing García's overall performance. De Delva did not have knowledge of García's participation in Ratcliffe's 1982 or 1983 hearing at the time she decided to discharge him. (Defendant's Statement, ¶¶ 16, 17.)

12. García requested a grievance of his discharge pursuant to American Airlines' Rules and Regulations, Section 135–4. (Defendant's Statement, ¶ 18.) To grieve a discharge in Puerto Rico, the employee must:

a) Present a written request to the General Manager, requesting an interview to review the facts involved in the action or discharge.

b) If upon reviewing the facts the General Manager sustains the discharge, there must be requested a grievance before a stateside Hearing Officer not previously acquainted with the facts, who arbitrates the dispute. The employee is given the opportunity to be represented by counsel.

c) Should the Hearing Officer sustain the supervisor's decision, the employee must appeal to a review board. Otherwise, the Hearing Oficer's decision becomes final and binding. (Defendant's Statement, ¶ 6.)

13. The General Manager at the time of plaintiff's discharge was Mr. Frank J. Esposito. Mr. Esposito met with plaintiff and his supervisor in the process of reviewing the discharge. He sustained the discharge, because plaintiff did not rebut the performance deficiencies noted by his supervisor. At the time, Mr. Esposito was not aware that plaintiff had been a witness for Mr. Ratcliffe in any company grievance hearings. (Defendant's Statement, ¶ 18.)

14. García requested to arbitrate his grievance concerning his discharge before a Hearing Officer by appeal dated December 12, 1985. The arbitration hearing before the Hearing Officer occurred on April 29, 1986. García was represented by Mr. Joe Mancuso and Mr. Nicolás Delgado. The Hearing Officer was Mr. J.J. Kozakis. The hearing produced a transcript of approximately 250 pages of testimony and exhibits. (Defendant's Statement, ¶ 19.)

15. The Hearing Officer issued a written decision sustaining the discharge on July 15, 1986. García never appealed the Hearing Officer's decision. (Defendant's Statement, ¶ 20.)

### The Standard for Summary Judgment

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548 91 L.Ed.2d 265 (1986). The Court will examine the record in the light most favorable to the plaintiff, *Poller v. Columbia Broadcasting System,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962), and will indulge all inferences favorable to the plaintiff. *Hahn v. Sargent,* 523 F.2d 461 (1st Cir.1975).

### Contentions of the Parties

Plaintiff contends American Airlines is liable because it retaliatorily dismissed him from employment. American Airlines claims plaintiff contractually agreed to submit the propriety of his discharge to binding arbitration. It notes that the Hearing Officer sustained plaintiff's discharge. It claims that plaintiff effectively is seeking to vacate a binding award, which he cannot do, because of the absence of grounds to do so, and particularly, the lapse of the term in which the award may be vacated. Insofar as plaintiff effectively seeks to vacate an award in an untimely manner, American Airlines contends this Court cannot entertain plaintiff's claim that he was wrongfully discharged.

### Discussion

■ On July 3, 1986, the Legislative Assembly of Puerto Rico amended Law 80 of May 30, 1976 29 L.P.R.A. 185b, to include an anti-retaliation provision. An employee's participation in administrative, legislative, and judicial proceedings against his employer can no longer constitute just cause for dismissal. Law 65, July 3, 1986. Under Law 65, García might have a claim against American if the law protected his participation in the Jorge Ratcliffe hearing, and if he could show retaliatory discharge. But García was terminated in November, 1985, nearly eight months before the anti-retaliation statute took effect.

Puerto Rico adheres to the general non-retroactivity of the laws. 31 L.P.R.A. § 3. Only when the legislature intends retrospective application can this general rule be avoided; but such intent must be clear on the face of the Statute. *Vazquez v. Morales,* 114 D.P.R. 822 (1983). Law 65 is clearly intended to operate prospectively. *See* Article 2, Law 65, July 3, 1986. This statement of legislative intent is clear, and plaintiff's claim that Law 65 merely codified an existing public policy is unavailing. We find no reason to circumvent T.31, § 3, and thereby impose an undue burden on the defendant to conform its action with non-existent laws. We shall not, therefore, impose the non-retaliation law retrospectively. *Cf. Dion v. Secretary of Health & Human Services,* 823 F.2d 669, 671 (1st Cir.1987).

■ Even if plaintiff could show that he engaged in an activity protected by Law 65 (or by public policy) he cannot escape summary judgment if American shows the absence of retaliation. Puerto Rican courts have not yet determined what constitutes retaliation under Law 65, and we shall thus apply principles of federal law to this case. *Jiménez v. Almodóvar,* 650 F.2d 363 (1st Cir.1981). To make a prima facie case for retaliatory discharge, the plaintiff must show he engaged in a protected activity, that he was fired, and that there is a causal link between the two. *Cf. Wrighten v. Metropolitan Hospitals, Inc.,* 726 F.2d 1346 (9th Cir.1984). When a discharge is

for conduct inconsistent with an employee's duties, no question of retaliation arises. *Pendleton v. Rumsfeld*, 628 F.2d 102, 108 (D.C.Cir.1980). Based on the Defendant's Statement of Material Facts (to which plaintiff offered no specific rebuttals, contrary to Local Rule 311.12), the sworn statements of García's two immediate supervisors, and García's deposition, we find that García's termination was for just cause and that there was no causal link between his allegedly protected activities and his discharge.

As noted above, García submitted his complaint to the American Airlines grievance process in late 1985. General Manager Frank Esposito upheld the decision to terminate García, and García requested arbitration before a hearing officer in December 12, 1985. García, represented by counsel, failed to convince Hearing Officer J.J. Kozakis that his termination was unjustified. Although plaintiff did not directly address the issue of retaliation, he had a full opportunity to present to the Hearing Officer his claims and evidence regarding just cause. Following a strong federal policy favoring voluntary arbitration, this Court must preclude the plaintiff either from bringing the same claim under new labels or from bringing new claims that should have been brought to the attention of the arbitrator. *Schattner v. Girard, Inc.*, 668 F.2d 1366, 1368 (D.C.Cir.1981).

It is evident in this case that plaintiff lost his challenge to his dismissal in arbitration, but when Law 65 was passed several months later, he saw an opportunity to resurrect his claim under a new theory. If there had been a factual basis for García's claim of retaliation, he should have raised the issue in arbitration.

In fact, plaintiff argued in detail the circumstances of the various disciplinary actions, as well as his dismissal. The record before us indicates that the Hearing Officer was justified in finding just cause for dismissal due to García's poor performance. The plaintiff had been given several C–314 notices that contained warnings; his performance was documented as unsatisfactory; and he repeatedly failed to follow company procedures. There was, in sum, just cause for his dismissal on November 18, 1985.

In addition, plaintiff has offered no evidence supporting a causal link between this incident and Ms. De Delva's decision. García merely claims in his sworn statement that another American Airlines employee had warned him of adverse consequences of appearing at the Jorge Ratcliffe hearing. Defendant has offered sworn testimony that neither De Delva or Esposito knew of García's participation in the hearing. Because this testimony is undisputed, because De Delva had a legitimate, non-retaliatory reason for discharging García, and because more than two years elapsed between the Ratcliffe hearing and García's dismissal, we conclude that the retaliatory discharge claim is without merit. *See Talley v. United States Postal Service*, 720 F.2d 505, 508 (8th Cir.1983).

The Motion for Summary Judgment is GRANTED, and the case is hereby DISMISSED.

The Clerk shall enter Judgment accordingly.

IT IS SO ORDERED.