LEO BÁIZ, demandante y apelante, *v.* COMISIÓN HÍPICA INSU-
LAR DE PUERTO RICO y AUDITOR DE PUERTO RICO, deman-
dados y apelados.

Núm. 8805.—*Sometido:* Marzo 7, 1944. *Resuelto:* Abril 26, 1944.

*Rafael Cuevas Zequeira,* abogado del apelante; *Diego O. Marrero,*
abogado de la Comisión Hípica, apelada; *Hon. Procurador Ge-
neral Interino M. Rodríguez Ramos* y *Carmen B. Hernández,
Procurador Auxiliar* y *J. Rivera Barreras, Procurador Auxiliar,*
abogados del Auditor, apelado.

EL JUEZ ASOCIADO SEÑOR TODD, JR., emitió la opinión del tri-
bunal.

La única cuestión a resolver en este recurso es si el artículo
177 del Código Político y el párrafo 13 de la sección 34 de
la Ley Orgánica prohiben que el demandante pueda recibir
compensación por servicios prestados como veterinario de la
Comisión Hípica Insular durante el período en que dicho
demandante era un empleado del Departamento de Sanidad
de Puerto Rico. En una acción sobre sentencia declaratoria
la corte inferior resolvió que el demandante no tenía derecho

a percibir dicha compensación y se basó (*a*) en la doctrina del caso de *López* v. *Martorell*, 59 F. (2d) 176, y (*b*) en que la Comisión Hípica Insular es uno de los organismos a que se refiere el citado artículo 177 del Código Político, según quedó enmendado por la Ley núm. 124 de 2 de agosto de 1913 (Leyes de 1913–14, pág. 41)[1]

██ El argumento principal del apelante de que la Comisión Hípica Insular no es un organismo que depende del gobierno porque sus fondos provienen de las jugadas que se hacen en los hipódromos, carece de méritos. La frase "que dependa del gobierno", según se usa en el artículo 177 del Código Político, no significa necesariamente que la junta, comisión u organismo dependa *económicamente* del gobierno insular para su funcionamiento. El verdadero alcance y significado de dicha frase lo encontramos en el texto inglés del estatuto que se limita a decir "*dependency thereof*". Es decir la prohibición incluye a cualquier funcionario o empleado regular del gobierno insular cuyo haber esté fijado por ley—como en el caso del apelante que desempeñaba el cargo de Inspector de Sanidad—que pretenda percibir paga

---

[1] "Artículo 177.—Ningún funcionario o empleado que esté regularmente empleado en el servicio del Gobierno Insular, o de cualquier municipio, u organismo que dependa del Gobierno, cuyo salario, haber o estipendio sea fijado de acuerdo con la ley, recibirá paga adicional, o compensación extraordinaria de ninguna especie, del Gobierno Insular *o de cualquier municipio, junta, comisión u organismo que dependa del Gobierno, en ninguna forma,* por servicio personal u oficial de cualquier género, aunque sea prestado en adición a las funciones ordinarias de dicho funcionario o empleado, a menos que la referida paga adicional o compensación extraordinaria esté expresamente autorizada por la ley, y conste expresamente en la correspondiente asignación que ésta se destina a dicha paga adicional o compensación extraordinaria; *Disponiéndose, sin embargo,* que nada de lo aquí provisto tendrá aplicación a los médicos y practicantes que presten sus servicios en las cárceles de distrito y establecimientos sanitarios y benéficos a cargo de El Pueblo de Puerto Rico, los cuales podrán percibir, en lo que respecta a médicos, una remuneración adicional por este concepto que no exceda del cincuenta (50) por ciento del sueldo principal que disfrutaren como empleados de El Pueblo de Puerto Rico o de cualquier municipalidad de la Isla; *Y disponiéndose además,* que nada de lo contenido en este Artículo se interpretará en el sentido de que afecte o modifique cualesquiera disposiciones de leyes vigentes en que se ordene la suspensión, total o parcial, de los preceptos de dicho Artículo 177." (Bastardillas nuestras.)

o compensación adicional por servicio personal u oficial de cualquier género de cualquier junta, comisión u organismo que sea a su vez una *dependencia* del gobierno insular. [2] Que la Comisión Hípica Insular es una dependencia del Gobierno Insular no tenemos duda, pues debe su existencia a una ley de la Legislatura [2] a virtud de la cual sus miembros son nombrados por el Gobernador con el consejo y consentimiento del Senado de Puerto Rico; debe adoptar y usar un sello oficial del cual toman conocimiento judicial los tribunales, sus ingresos son depositados en el Tesoro Insular y se mantienen en un fondo especial, y todo su funcionamiento está regulado por dicha ley.

Los fondos de la Comisión Hípica lo constituyen el 5 por ciento de los descuentos del 30 por ciento que se hagan en los hipódromos del total bruto apostado "en los *'subscription funds', 'pools', 'mutuels'* y en cualquier otro sistema de apuestas que por reglamento autorice y regule la Comisión Hípica Insular." (Artículo 29 Ley de 1941). Los ingresos así obtenidos son invertidos o gastados, no como desee y determine la Comisión Hípica, sino en la forma en que la Legislatura expresamente ha provisto en el artículo 31 de la Ley.[3] Una mera lectura de este artículo demuestra que si bien los fondos de la Comisión Hípica provienen de las apuestas hechas en los hipódromos dicho organismo, como

---

[2] Ley núm. 11 de 18 de abril de 1932 (Leyes de 1931–32, pág. 195), subsiguientemente enmendada varias veces, siendo la última por la Ley núm. 184 de 14 de mayo de 1941 ((1) pág. 1387).

[3] "Artículo 31.—La Comisión Hípica Insular dispondrá de no más del ochenta (80) por ciento de dichos ingresos para el pago de sus dietas o sueldos, así como los de sus funcionarios y empleados y los gastos corrientes, y para contribuir a aumentar los premios de las carreras en que se otorguen copas o trofeos y para asignar premios a los *'jockeys'* y *'trainers'* y dueños de caballos y a los dueños de potreros en la forma y cuando dicha Comisión lo creyere conveniente a los intereses del deporte hípico y para el mejoramiento de la raza caballar en Puerto Rico. No menos del veinte (20) por ciento restante será repartido en la forma siguiente: el setenta (70) por ciento para ser repartido proporcionalmente entre los municipios para ser invertido en el sostenimiento de comedores escolares en la zona urbana y el balance del treinta (30) por ciento para ser repartido entre las instituciones benéficas que no estén sostenidas por el estado y en las

dependencia del gobierno, sólo puede invertirlos para los fines expresamente especificados por la Legislatura y aun en determinados casos necesita obtener la aprobación del Gobernador de Puerto Rico. Siendo esto así, no pueden considerarse dichos fondos, como pretende el apelante, fondos privados de la Comisión Hípica y a cuya inversión no pueda aplicarse la prohibición contenida en el artículo 177 del Código Político, supra, y la disposición del párrafo 13 del artículo 34 de la Carta Orgánica al efecto de que ninguna ley "permitirá a ningún funcionario o empleado percibir compensación por más de un cargo o empleo." En el caso de *López* v. *Martorell,* supra, se resolvió que esta prohibición del Acta Orgánica era aplicable aun en aquellos casos en que los cargos sean compatibles—como sostiene el apelante que lo son los que él desempeñó.

■ El hecho de que la Legislatura en el año 1943 aprobara una ley [4] enmendando el artículo 15 de la Ley Hípica, al efecto de que el pago de los honorarios de un veterinario nombrado por la Comisión Hípica Insular, cuando dicho veterinario presta además servicios al Gobierno de Puerto Rico, no estará sujeto a la prohibición contenida en el artículo 177 del Código Político, tiende a demostrar que la Legislatura consideró que dicha enmienda era necesaria para excluir un caso como el del apelante de los efectos de dicha prohibición.

cantidades que determinare dicha Comisión con la aprobación del Gobernador de Puerto Rico. *Disponiéndose,* que el por ciento anteriormente designado para los comedores escolares, por la presente se asigna a los fondos de la Comisión Hípica Insular, por el término de un año, a partir de julio 1ro. 1941, para solventar el déficit de dicha Comisión según figure en la indicada fecha; *Y entendiéndose,* que al vencimiento de dicho año, o sea, a partir de julio 1ro. 1942, dicho por ciento asignado a los comedores escolares, se distribuirá a los mismos, en la forma anteriormente dispuesta por esta Ley. *Disponiéndose, además,* que la Comisión Hípica Insular de sus otros ingresos consignará en el presupuesto que ha de regir para el año fiscal 1941–42 la cantidad necesaria adicional para solventar dicho déficit. *Y disponiéndose, además,* que la Comisión Hípica Insular asignará anualmente en su presupuesto una cantidad no menor de $1,000 para crear un fondo de reserva, hasta la suma de $15,000, y contra el cual fondo, solamente podrá girar con la aprobación del Gobernador de Puerto Rico."

(4)Ley núm. 85 de 12 de mayo de 1943 (pág. 199).

Asumiendo, sin resolverlo, que dicha enmienda sea válida, no obstante la prohibición contenida en la sección 34 de la Carta Orgánica, es obvio que a la misma no puede dársele efecto retroactivo para cubrir el caso del apelante, ya que la Legislatura expresamente no lo dispuso así.  Artículo 3 Código Civil.

*Debe confirmarse la sentencia apelada.*