CARMEN M. FRANCESCHINI y EVELYN U. FRANCESCHINI, demandantes y recurridas, *v.* DAGOBERTO UJAQUE ORTIZ, SIGFREDO UJAQUE ORTIZ ET AL., demandados y peticionarios.

*Número:* CE-87-287        *Resuelto:* 27 de junio de 1990

542

*Frank M. Ramírez Ramírez*, abogado de los peticionarios; *Rafael Vázquez Báez*, abogado de las recurridas.

La Juez Asociada Señora Naveira de Rodón emitió la opinión del Tribunal.

Hoy nos toca resolver si la ley aplicable para determinar el *status* de cónyuge inocente o culpable para propósitos del derecho al usufructo viudal, Art. 761 del Código Civil, 31 L.P.R.A. sec.

2411, es aquella vigente al momento de decretarse el divorcio o aquella vigente al fallecer el ex cónyuge y materializarse el derecho a la cuota usufructuaria viudal.

## I

El 15 de noviembre de 1985 Carmen M. Franceschini y Evelyn Ujaque Franceschini presentaron demanda contra Maritza Ujaque Pesante y Dagoberto, Sigfredo y María Luisa, todos de apellido Ujaque Ortiz, mediante la cual solicitaban la división de la herencia de su causante, Don Dagoberto Ujaque Pérez, quien falleció el 29 de julio de 1984. Alegaron, en síntesis, que al momento de su muerte éste dejó bienes sitos en Mayagüez, los cuales enumeraron; que estos bienes están en poder de los demandados; que la codemandante Doña Carmen Mercedes Franceschini mantuvo un matrimonio consensual con el causante por más de veinte (20) años, y que el señor Ujaque Pérez otorgó testamento.

El 17 de marzo de 1986 los demandados contestaron y reconvinieron. Alegaron, entre otras cosas, que el causante Don Dagoberto estuvo casado en únicas nupcias con Doña Luz María Ortiz, de la cual se divorció el 18 de marzo de 1966, y que ésta tenía derecho a recibir la cuota viudal usufructuaria. Solicitaron se incluyese a Doña Luz María como heredera en la cuota viudal usufructuaria. Las demandantes se opusieron.

Luego de una serie de trámites procesales, el 13 de marzo de 1987 el tribunal emitió resolución en la cual dictaminó que Doña Luz María no tenía derecho a la cuota viudal usufructuaria que reclamaba. Razonó que mediante las Leyes Núm. 101 de 2 de junio de 1976 y Núm. 183 de 26 de julio de 1979 (31 L.P.R.A. sec. 321) se eliminó el aspecto de culpa en la causal de divorcio por separación y que siendo ésta la legislación vigente al momento del fallecimiento de Don Dagoberto, al no tener Doña Luz María el *status* de cónyuge inocente, no tenía derecho a la cuota viudal usufructuaria.

No conformes los demandados, alegaron mediante recurso de *certiorari* la comisión del error siguiente:

Habiéndose disuelto un matrimonio mediante sentencia de divorcio por la causal de Separación emitida en el año 1966 por una Sala de Instancia, considerado el hecho de que con posterioridad al divorcio ninguno de los ex-cónyuges contrajo nuevas nupcias y fallecido en el año 1984 el ex-cónyuge varón; si a la mujer divorciada debe considerársele cónyuge viuda y con derecho a la cuota usufructuaria en la herencia del causante, bajo la legislación que le conceptuaba cónyuge inocente. Petición de *certiorari*, pág. 3.

Decidimos revisar y expedimos el auto.

## II

Los peticionarios arguyen que en vista de que al momento del divorcio de Doña Luz María y Don Dagoberto el Art. 96 del Código Civil, 31 L.P.R.A. sec. 321, disponía que al dictarse la sentencia de divorcio por separación siempre se consideraría como cónyuge inocente a la mujer con todos los derechos inherentes a tal condición, era incuestionable su derecho a participar en la herencia de su ex cónyuge en su condición de usufructuaria viudal.

Por su parte, los recurridos sostienen que la ley vigente al momento de ocurrir la muerte del causante es la ley que aplica a la transmisión de derechos y obligaciones hereditarias y, por consiguiente, que la peticionaria Doña Luz María Ortiz no tenía derecho a la cuota usufructuaria, pues en ese momento la legislación consideraba tanto al causante como a su ex esposa como cónyuges inocentes.

No cabe duda que la disposición legal aplicable para determinar el derecho al usufructo viudal es el Art. 761 del Código Civil, *supra*. Para tener derecho al usufructo viudal se requiere: (1) que al morir el ex cónyuge, *el sobreviviente esté divorciado por culpa del difunto*; (2) que el divorciado inocente no se haya casado de nuevo (*Marxuach v. Registrador*, 57 D.P.R. 134 (1940)), y (3) que el difunto no haya contraído nuevas nupcias (*Pirela v.*

*Registrador*, 65 D.P.R. 955 (1946); *Vidal v. Monagas*, 66 D.P.R. 622 (1946)).

En el caso de autos, el 29 de julio de 1984, al morir Don Dagoberto, éste se encontraba divorciado de Doña Luz María. Se habían divorciado el 8 de marzo de 1966 por la causal de separación. La ley vigente en ese momento le confirió *status* de cónyuge inocente a Doña Luz María y de culpable al difunto Don Dagoberto. Ninguno de los dos (2) se volvió a casar.

El tribunal de instancia y los recurridos opinan que la Ley Núm. 101, *supra*, tuvo el efecto de cambiar el *status* de cónyuge culpable del causante, Don Dagoberto, a cónyuge inocente. Estiman, por lo tanto, que fue la intención legislativa al aprobar la Ley Núm. 101, *supra*, aplicar dicha enmienda no sólo a las personas que se divorciaran bajo dicha causal con posterioridad a su aprobación, sino también a todas aquellas que ya estaban divorciadas al amparo de dicha causal al momento en que ésta fue aprobada. Esta interpretación es incorrecta. Veamos.

### III

Comenzaremos analizando el Art. 761 del Código Civil, *supra*.([1]) El propósito de este artículo es garantizarle al cónyuge supérstite el derecho a la cuota viudal cuando al momento de la muerte del otro cónyuge el matrimonio aun subsistiese. A tenor con lo allí dispuesto, aun cuando haya mediado divorcio, debe entenderse que el matrimonio subsiste cuando el cónyuge supérstite se halla divorciado por culpa del causante y ambos permanecen sin haber contraído nuevas nupcias. F. Sánchez Román, *Estudios de Derecho Civil*, 2da ed., Madrid, Scrs. de Rivandeneyra, 1910, T. VI, Vol. 2, págs. 822–823; *Marxuach v. Registrador*, supra; *Pirela v. Registrador*, supra. En la consecución de este propósito, el Art. 761, *supra*, además de disponer que para tener derecho a la cuota viudal usufructuaria es necesario

---

([1]) No estamos resolviendo si debe prevalecer o no el derecho a la cuota viudal usufructuaria en nuestra jurisdicción. Este es un asunto que, en última instancia, debe ser resuelto por la Asamblea Legislativa y no por los tribunales.

que el ex cónyuge fallecido haya sido declarado cónyuge culpable en el divorcio, contiene una disposición que provee que "[s]i estuvieren los cónyuges separados por demanda de divorcio, se esperará el resultado del pleito". En otras palabras, el propio Art. 761, *supra*, dispone la determinación del *status* de cónyuge culpable a partir de la fecha en que se decreta el divorcio. Una vez determinado este *status*, entonces procede resolver si se tiene o no derecho a la cuota viudal usufructuaria. Tanto es así, que el Art. 834 del Código Civil Español de 1889, de donde proviene el actual Art. 761 nuestro, específicamente disponía que "[s]i entre los cónyuges divorciados hubiere mediado perdón [o] reconciliación, el sobreviviente conservará sus derechos". E. Díaz Guijarro y A. Martínez Ruiz, *El Código Civil español interpretado por el Tribunal Supremo*, Sevilla, Tipografía de la Rev. de Tribunales, 1903, pág. 444.

Comentando el Art. 834 español, Díaz Guijarro y Martínez Ruiz, *op. cit.*, pág. 460, expresan lo siguiente:

> Determina el Código que el cónyuge viudo tendrá derecho [a] la cuota vidual si al morir su consorte no se hallare divorciado [o] lo estuviese por culpa del cónyuge difunto; y más adelante agrega que, si estuvieren separados por demanda de divorcio, se esperará el resultado del pleito. Sencillo y natural es el precepto: la cuota vidual se dá por razón y en consideración al matrimonio, si esta unión no existe el derecho [a] la misma no puede nacer, [a] *menos que se pruebe por la sentencia de divorcio*, que el culpable [fue] el cónyuge difunto. (Énfasis suplido.)

El tratadista Sánchez Román, por su parte, nos señala que "[e]s preciso para la existencia de la cuota viudal, bajo este respecto, en la doctrina y en la ley, que al tiempo en que la sucesión deba causarse, por la muerte de uno de los cónyuges, *subsistiera* el matrimonio, entendiéndose que *subsiste* . . . ; (d) Cuando el viudo o viuda, al morir su consorte, no se halle divorciado o *lo estuviere por culpa del cónyuge difunto, si antes de disolverse el matrimonio por la muerte de uno de ellos no hubiere sobrevenido reconciliación; debiendo esperarse al resultado del pleito si en dicho tiempo hubiere pendiente demanda de*

*divorcio"*. (Énfasis suplido.) Sánchez Román, *op. cit.,* págs. 822–823.

No cabe duda que si bien es cierto que aunque la determinación sobre si el ex cónyuge supérstite tiene o no derecho a una cuota viudal usufructuaria se rige por el Art. 761 del Código Civil, *supra,* según éste lea al momento de la muerte del otro cónyuge, no es menos cierto que para determinar el *status* de inocente o culpable de los ex cónyuges hay que retrotraerse al momento en que se dictó la sentencia que decretó el divorcio.

A la fecha de la muerte del causante, la peticionaria, Doña Luz María, reunía todos los requisitos establecidos por el Art. 761 del Código Civil, *supra,* para ser acreedora al usufructo viudal. Resulta, pues, inevitable concluir que estamos efectivamente ante la aplicación retroactiva de una ley.

Estamos de acuerdo con que el derecho a la cuota viudal usufructuaria surge únicamente al momento de la muerte del causante; que la sentencia de divorcio de 1966 no le adjudicó a Doña Luz María un derecho a dicha cuota, y que si el legislador hubiese dispuesto que a partir del 2 de junio de 1976 todas las personas ya divorciadas bajo la causal de separación y aún vivas advendrían a ser ambos cónyuges inocentes sin derecho al usufructo viudal provisto por el Art. 761 del Código Civil, *supra,* ésto no hubiera violado derechos adquiridos. Lo dicho no significa, sin embargo, que al aprobar la Ley Núm. 101, *supra,* el legislador intentase cambiar el ordenamiento sucesorio. Todo lo que hizo fue disponer que desde el momento de la aprobación de la Ley Núm. 101, *supra,* a toda persona divorciada al amparo de la causal de separación se le consideraría cónyuge inocente. Esto, claro está, necesariamente conllevó que al aplicar el citado Art. 761 a todos los divorciados por la causal de separación con posterioridad a la aprobación de la enmienda, éstos no tendrían derecho a la cuota viudal usufructuaria.

Hemos examinado detenidamente el historial legislativo de la Ley Núm. 101, *supra,* y de la Ley Núm. 183, *supra,* y no hemos encontrado indicio de que la intención del legislador fue la de

alterar el mandato del Art. 761 del Código Civil, *supra*, de que el *status* de cónyuge inocente o culpable se determinara al momento en que se decretó el divorcio.

Al aprobarse las Leyes Núm. 101 y Núm. 183, *supra*, no se discutió la aplicación de estas medidas a las personas ya divorciadas bajo la causal de separación ni el efecto que dicha enmienda tendría sobre éstas. Es principio de hermenéutica legal reconocido que las leyes tienen efecto prospectivo, salvo que por vía de excepción el legislador quiera darles efecto retroactivo. Art. 3 del Código Civil, 31 L.P.R.A. sec. 3; *Catholic Univ. of P.R. v. Srio. Hacienda*, 93 D.P.R. 522, 533–534 (1966); R. Bernier y J.A. Cuevas Segarra, *Aprobación e interpretación de las leyes en Puerto Rico*, 2da ed., San Juan, Pubs. J.T.S., 1987, Vol. I, Cap. 63, pág. 391. Véase, también, *Ocasio v. Díaz*, 88 D.P.R. 676, 754, 782 (1963), opinión disidente y concurrente del Juez Asociado Señor Pérez Pimentel.

Respecto al principio de irretroactividad de una ley, en *Vázquez v. Morales*, 114 D.P.R. 822, 831 (1983), expresamos que "la intención de la Asamblea Legislativa al darle efecto retroactivo a una ley —por ser la excepción— debe aparecer expresamente o surgir claramente del estatuto". En la letra de la ley o en el historial legislativo debe constar la intención de darle efecto retroactivo. Bernier y Cuevas Segarra, *op. cit.*; *Díaz v. Srio. de Hacienda*, 114 D.P.R. 865, 872–873 (1983); *Ocasio v. Díaz*, supra. Ni de la letra ni del historial legislativo de las Leyes Núm. 101 y Núm. 183, *supra*, surge que la intención fuese que éstas se aplicaran retroactivamente a personas ya divorciadas por la causal de separación.

En el caso de autos, por lo tanto, el orden sucesorio se rige por el Art. 761 del Código Civil, *supra*, según éste disponía al momento de la muerte del causante, mientras que la determinación del *status* de culpable o inocente de los ex cónyuges (Don

Dagoberto y Doña Luz María) se rige por la ley vigente al momento en que se decretó la sentencia de divorcio.(2)

Por todo lo antes expuesto, *se dictará sentencia que revoque la resolución dictada por el Tribunal Superior, Sala de Mayagüez, el 13 de marzo de 1987 y se devuelve el caso al tribunal de instancia para que continúen los procedimientos de forma compatible con lo aquí resuelto.*

El Juez Asociado Señor Negrón García emitió opinión concurrente y de conformidad. El Juez Asociado Señor Alonso Alonso emitió opinión disidente, a la cual se une el Juez Asociado Señor Rebollo López.

—O—

Opinión concurrente y de conformidad del Juez Asociado Señor Negrón García.

I

Nos unimos a la opinión del Tribunal por entender que distingue y cualifica —con absoluta nitidez— la norma adoptada en *Ripoll Alzuru v. Rosa Pagán,* 121 D.P.R. 1 (1988), de la situación planteada en el caso de autos.

---

(2) Cabe señalar, además, que los casos *Ab Intestato De Ana Garroti,* 79 D.P.R. 190 (1956); *Andrades, Ex parte,* 59 D.P.R. 664 (1942); *Berdecía v. Tribunal Superior,* 87 D.P.R. 108 (1963), y *Martínez v. Vda. de Martínez,* 88 D.P.R. 443 (1963), que discuten "que los derechos sucesorios de las partes se regulan por la legislación prevaleciente al momento en que fallece el causante" presentan situaciones claramente distinguibles de la que ahora nos toca resolver. En casi todos estos casos se trataba estrictamente de la aplicación de legislación sobre el orden sucesorio vigente al momento de fallecer el causante. Sólo *Martínez v. Vda. de Martínez,* supra, requería también la aplicación de la ley que regía el *status* filiatorio del peticionario. En esa ocasión hicimos una distinción entre estas dos (2) situaciones, indicando que el orden sucesorial se regía por la ley vigente a la fecha de la muerte del causante, mientras que el *status* filiatorio se determinaba por la ley vigente a la fecha del nacimiento de la persona cuyo *status* estuviera en discusión. En el caso de autos sucede lo mismo: el orden sucesorio se rige por el Art. 761 del Código Civil, 31 L.P.R.A. sec. 2411, según éste disponía al momento de la muerte del causante, mientras que la determinación del *status* de culpable del ex cónyuge difunto se rige por la ley vigente al momento en que se decretó la sentencia de divorcio, según esta ley quedó plasmada en el dictamen judicial.

Si bien es cierto que el derecho a la cuota viudal usufructuaria surge únicamente al momento de la muerte del causante, *el "status" de cónyuge inocente o culpable sólo se adquiere al decretarse el rompimiento del vínculo matrimonial.* Obviamente esta última incidencia depende de la causal del divorcio alegada, probada y refrendada judicialmente. Es por esta razón que estas dos (2) instancias temporales no deben entremezclarse ni confundirse. Como eventos separados y de naturaleza diferenciable, tienen efectos y consecuencias jurídicas disímiles.

## II

Aquí Luz María Ortiz, ex cónyuge del causante, fue declarada cónyuge inocente en la sentencia de divorcio por la causal de separación emitida el 19 de marzo de 1966. Ese *status* quedó inalterado a pesar de que la legislación posterior eliminó el elemento de culpa en dicha causal. Es claro que de ninguna manera el legislador proyectó darle efectos retroactivos a la nueva legislación, pues no hizo constar de manera expresa esa intención. *Art. 3* del Código Civil, 31 L.P.R.A. sec. 3; *Vázquez v. Morales,* 114 D.P.R. 822, 825–831 (1983); *Báiz v. Comisión Hípica,* 63 D.P.R. 483, 486–487 (1944).

La esencia decisoria de *Ripoll Alzuru v. Rosa Pagán,* supra, es que así como la muerte no pudo convertir en culpable a un cónyuge inocente, tampoco una actuación legislativa con alcance prospectivo puede devolverle la inocencia a un cónyuge culpable.

Es necesario aclarar que no pasamos juicio sobre la sabiduría, virtudes o impopularidad de la legislación examinada. Art. 21 del Código Civil, 31 L.P.R.A. sec. 21; *Pueblo Int'l, Inc. v. Srio. de Justicia,* 122 D.P.R. 703 (1988), opinión concurrente; *McCormick v. Marrero, Juez,* 64 D.P.R. 260, 267 (1944); *M. Taboada & Co. v. Rivera Martínez, Comisionado,* 51 D.P.R. 253, 258–273 (1937). Ausente un planteamiento constitucional válido al efecto, cualquier iniciativa judicial dirigida a limitar o eliminar la institución del usufructo viudal corresponde a la Legislatura. Los tribunales debemos abstenernos de traspasar esos lindes.

—O—

Opinión disidente emitida por el Juez Asociado Señor Alonso Alonso, a la cual se une el Juez Asociado Señor Rebollo López.

Disiento de la opinión mayoritaria del Tribunal por los fundamentos siguientes: (a) la opinión va en contra de la norma que recientemente establecimos en *Ripoll Alzuru v. Rosa Pagán*, 121 D.P.R. 1 (1988); (b) la misma tiene el efecto de mantener una distinción por razón de sexo que nuestra Constitución, leyes y jurisprudencia han erradicado, y (c) confiere al dictamen de cónyuge inocente de una sentencia de divorcio efectos sucesorios que no están acordes con nuestro ordenamiento sucesorio.

I

En *Ripoll Alzuru v. Rosa Pagán*, supra, sostuvimos que un ex cónyuge que se ha divorciado por la causal de separación no tiene derecho a la cuota usufructuaria viudal a que hace referencia el Art. 761 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 2411. Allí expresamos que dicho artículo sólo confiere ese derecho cuando el ex cónyuge fallecido ha sido declarado cónyuge culpable en el divorcio requiriéndose, por lo tanto, que exista un cónyuge con culpa para que el inocente pueda ser acreedor al derecho de la cuota usufructuaria viudal.

La interpretación de la norma de *Ripoll Alzuru v. Rosa Pagán*, supra, cobró efectividad precisamente a partir de la adopción de la Ley Núm. 101 de 2 de junio de 1976 (31 L.P.R.A. sec. 321). A esos efectos citamos del texto de la opinión:

> *La interpretación del foro de instancia que aquí refrendamos —efectiva a partir de la Ley Núm. 101, supra— es razonable. . . .* (Énfasis suplido.) *Ripoll Alzuru v. Rosa Pagán*, supra, pág. 21.

La norma que hoy enuncia este Tribunal contraviene este precedente.

Al ocurrir la disolución del matrimonio establecido entre el señor Ujaque Pérez y la Sra. Luz María Ortiz mediante sentencia de divorcio por separación, la legislación vigente consideraba a la

mujer como cónyuge inocente con todos los derechos inherentes a tal condición. *Al hombre, por el contrario, se le designaba automáticamente como cónyuge culpable. Art. 96 del Código Civil de 1930* (31 L.P.R.A. sec. 321).

Cuando la Asamblea Legislativa aprobó la Ley Núm. 101, *supra*, para enmendar el Art. 96 del Código Civil, *supra*, a los efectos de disponer que en los casos de divorcio por separación ninguno de los cónyuges fuera considerado como culpable o inocente, *lo hizo partiendo de un esquema conceptual encaminado a la eliminación del discrimen por sexo. Entendió el legislador "que, en justicia, no se p[odía] argumentar que se equipar[aba]n los derechos de la mujer a los del hombre y a la vez propulsar que se mant[uvier]an situaciones de privilegio para ésta frente a aquél".* Exposición de Motivos de la Ley Núm. 101, *supra*, Leyes de Puerto Rico 317.

Al disponerse en el nuevo texto que en el divorcio por separación ninguno de los ex cónyuges se considerará culpable, el legislador era consciente de las consecuencias que ello conllevaba sobre el derecho a la cuota viudal usufructuaria. Así se desprende claramente de la propia Exposición de Motivos de la Ley Núm. 101 antes citada.

En 1979 la Asamblea Legislativa aprobó, con propósitos de disipar dudas, la Ley Núm. 183 de 26 de julio de 1979. Esta medida dispuso que para fines del Art. 761 del Código Civil, *supra*, se considerarían ambos cónyuges como inocentes, reafirmando con ello la intención manifestada en 1976.

Por lo tanto, no podemos sostener, como lo hace la norma enunciada por este Tribunal, que al aprobarse la Ley Núm. 101, *supra*, el efecto sucesorio sobre *status* creado por la sentencia de divorcio se mantuvo intacto hasta el momento de la muerte del señor Ujaque Pérez.

## II

Lo resuelto hoy tiene el efecto de mantener el discrimen por razón de sexo en casos análogos al de autos que tanto nuestra

Constitución, aprobada el 25 de julio de 1952, como el legislador —al aprobar la Ley Núm. 101, *supra*— erradicaron. La clasificación que hoy se mantiene discrimina tanto contra el hombre como contra la mujer. Discrimina contra el hombre, pues en los casos de sentencias de divorcio por separación dictadas antes de aprobarse la Ley Núm. 101, *supra*, y en los que el hombre sobrevive a su ex cónyuge, por virtud de lo dispuesto en el Art. 96, *supra*, vigente en dicho momento, éste *nunca* tendrá derecho a la cuota usufructuaria de su ex esposa, pues dicho artículo automáticamente lo convierte en cónyuge culpable. Discrimina, además, contra la mujer en la medida en que "contribuye a perpetuar la imagen de la mujer como [un] ser inferior y necesariamente dependiente del hombre" después de la muerte de éste. Exposición de Motivos de la Ley Núm. 101, *supra*.

El resultado es que al hombre se le priva del referido usufructo como penalidad y a la mujer se le concede el mismo por ser considerada inferior y dependiente, todo ello fundado en un concepto de culpa erradicado de nuestro ordenamiento legal. *Cf. Figueroa Ferrer v. E.L.A.*, 107 D.P.R. 250 (1978).

La clasificación creada vía fiat judicial es insostenible en nuestro ordenamiento constitucional.

### III

Además, lo aquí resuelto contraviene principios fundamentales de nuestro ordenamiento sucesorio. Veamos.

La muerte de una persona conlleva determinar las relaciones jurídicas de que ésta era titular en vida y la posibilidad de que las que fueran de carácter patrimonial se transmitan a otra persona. De ahí que el derecho de sucesiones se defina como aquella parte del derecho civil que regula el destino del patrimonio de una persona *luego de su muerte*. Este derecho trata de llenar el vacío que con su fallecimiento deja el causante. J.L. Lacruz Berdejo, *Derecho de Sucesiones*, Barcelona, Ed. Labor, 1953, Vol. I, pág. 11; J. Castán Tobeñas, *Derecho Civil Español Común y Foral*, Madrid, Ed. Reus, 1978, T. VI, Vol.I, pág. 35.

Se ha dicho que el derecho de sucesiones —o también por antonomasia derecho hereditario— comprende el conjunto de normas que disciplinan la sucesión mortis causa. Castán Tobeñas, *op. cit.* En ese sentido *el derecho hereditario cobra vida cuando muere el causante* y es desde entonces que el llamado a la herencia adquiere el derecho a aceptarla o a repudiarla. M. Albaladejo, *Curso de Derecho Civil,* Barcelona, Ed. Bosch, 1982, T. V, pág. 15.

Una vez que muere el causante o éste es declarado muerto por determinación judicial, se produce la apertura de su sucesión originándose para los herederos y legatarios el derecho a adquirir la propiedad y la posesión de los bienes y obligaciones integrantes de la masa hereditaria. *Es únicamente a partir de esa fecha y no antes* que las normas de la ley o las disposiciones del testamento cobran vigencia al alterar el destino jurídico de los distintos elementos del activo y pasivo que integran el caudal del difunto. E. González Tejera, *Derecho Sucesorio Puertorriqueño*, San Juan, Ed. Ramallo, 1983, Vol. I, pág. 33.

Conforme a nuestro ordenamiento, para que pueda producirse la relación jurídica sucesoria se hace necesario el cumplimiento de ciertos requisitos, tales como: que tenga lugar el fallecimiento del causante; que a la muerte de la persona cobre vigencia un título sucesorio que presida el ordenamiento de la sucesión (testamento o ley); que del título sucesorio resulte heredera o legataria una persona que viva a la muerte del causante, y que dicha persona, en ese momento, no sea incapaz de heredar. J.R. Vélez Torres, *Derecho de Sucesiones*, Madrid, Ed. Sáez, 1974, pág. 14. En conformidad con ello, el Art. 603 del Código Civil, 31 L.P.R.A. sec. 2085, dispone que los derechos a la sucesión de una persona se transmiten desde el momento de su muerte, y es en ese instante, por ende, que se transmiten sus derechos y obligaciones. G. Velázquez, *Teoría del Derecho Sucesorio Puertorriqueño*, Hato Rey, Ed. Equity, 1968, pág. 9. De ahí que suelan decir los distintos tratadistas que "el muerto inviste al vivo".

Conforme con el Art. 603, *supra*, siempre habrá que referirse al momento de la muerte a fin de determinar no sólo el instante

exacto de la apertura de la sucesión, sino también para determinar *la capacidad del heredero o legatario* para concretar los efectos de la aceptación o del repudio de la herencia y también para situar temporeramente las consecuencias del principio de retroactividad que recoge el Código Civil en el Art. 944 (31 L.P.R.A. sec. 2722). Vélez Torres, *op. cit.*, págs. 14–15.

Señala Manresa, al comentar el Art. 657 del Código Civil español, que corresponde al Art. 603 del Código Civil de Puerto Rico, que los derechos sucesorios, ya tengan su origen en la ley o en la voluntad del causante, no tienen efectividad sino mediante el fallecimiento de éste, pues hasta ese momento puede cambiar la voluntad del testador o las propias disposiciones de la ley, alterando los llamamientos en los diversos órdenes de suceder y, aun sin alterarse dichas fuentes, pueden cambiar las circunstancias del favorecido hasta el punto de quedar desprovisto de todo derecho por haber incurrido en alguna causal de desheredación o indignidad. J.M. Manresa, *Comentarios al Código Civil Español*, Madrid, Ed. Reus, 1973, T. VI, Vol. 1, págs. 402–403.

Por su parte Scaevola, al comentar la misma disposición, señala que este artículo contiene el principio básico fundamental sobre el cual gira todo el tratado de sucesiones; esto es, que el derecho a suceder surge cuando ocurre el fallecimiento del causante. Q.M. Scaevola, *Código Civil*, Madrid, Ed. Reus, 1960, T. XII, Vol. 1, pág. 92. Si bien es importante considerar el momento en que tiene origen y raíz la existencia del derecho, es imprescindible aquel en que el mismo puede hacerse efectivo. Scaevola, *op. cit.*, pág. 95.

*Nuestro ordenamiento civil ubica la figura de la cuota usufructuaria viudal dentro del cuerpo del derecho sucesorio. De esta forma el derecho de la viuda a participar en la misma surge al momento de la muerte del causante.* Es claro que ese es el momento que da génesis al derecho a la cuota usufructuaria (*Ripoll Alzuru v. Rosa Pagán*, supra) pues hasta entonces únicamente existe una *expectativa* a participar de dicho derecho. Expectativa que, como veremos, está condicionada a la ocurrencia o no de varias contingencias.

Recordemos que para que el cónyuge supérstite pueda parti-cipar en la cuota usufructuaria se requiere, conforme a lo dispuesto por el Art. 761 del Código Civil, *supra*, y por nuestra jurisprudencia, lo siguiente:

(1) Que no esté divorciado, pero si lo está, que haya sido declarado cónyuge inocente por el tribunal en la sentencia de divorcio.

(2) Si es el cónyuge inocente, que no se haya casado de nuevo. *Marxuach v. Registrador*, 57 D.P.R. 134 (1940).

(3) Que el causante divorciado y declarado culpable por la sentencia de divorcio no haya contraído nuevas nupcias. *Pirela v. Registrador*, 65 D.P.R. 955 (1946); *Vidal v. Monagas*, 66 D.P.R. 622 (1946).

Como puede observarse, la muerte previa del ex cónyuge inocente o el matrimonio subsiguiente de cualquiera de los dos (2) ex cónyuges elimina la expectativa de participar de la cuota usufructuaria viudal. De ahí que el momento determinante para el surgimiento del derecho sea el del fallecimiento del causante.

Con este trasfondo evaluamos la contención de los peticiona-rios, acogida por este Tribunal, en el sentido de que habiéndose adjudicado por sentencia de divorcio de 1966 la culpabilidad del causante y la inocencia de la peticionaria, señora Ortiz, procedía que se le concediese a ésta su derecho a cuota usufructuaria viudal, ya que al momento del fallecimiento del causante, ni éste ni ella habían contraído nuevas nupcias.

*La norma prevaleciente en nuestro derecho sucesorio es que los derechos sucesorios de las partes se regulan por las leyes vigentes al tiempo del fallecimiento del causante. Martínez v. Vda. de Martínez*, 88 D.P.R. 443 (1963); *Ab Intestato De Ana Garroti*, 79 D.P.R. 190 (1956); *Travieso v. Del Toro y Travieso, Int.*, 74 D.P.R. 1009 (1953); *Cancel v. Martínez*, 74 D.P.R. 108 (1952). Por ello se aplica a la transmisión de los derechos y obligaciones hereditarias aquella legislación que se encuentre en vigor al momento de ocurrir la muerte del causante. *Cortés Córdova v. Cortés Rosario*, 86 D.P.R. 117 (1962).

Esta norma jurídica sucesoral la hemos aplicado consistentemente en distintos contextos. Veamos.

En *Ab Intestato De Ana Garroti*, supra, determinamos que los hijos naturales de la hermana natural de la causante Ana Garroti tenían derecho a heredarle por ésta haber fallecido sin dejar descendientes o ascendentes, aunque sí un cónyuge supérstite. *La ley vigente* al fallecimiento de la causante le concedía tal derecho a los hijos naturales. Por ende, le conferimos a éstos el derecho a participar en la herencia de su tía.

En *Andrades, Ex parte*, 59 D.P.R. 664, 665 (1942), dispusimos que la hermana natural de la madre legítima de una menor fallecida no tenía derecho a suceder a ésta ab intestato, pues al momento *de su muerte* el Art. 902 del Código Civil disponía que, "[e]l hijo natural reconocido no t[enía] derecho a suceder ab intestato a los hijos y parientes legítimos —con excepción de los abuelos y demás ascendientes— del padre o madre que lo h[ubiera] reconocido, ni aquéllos al hijo natural reconocido".

En *Berdecía v. Tribunal Superior*, 87 D.P.R. 108 (1963), sostuvimos que estando en controversia la herencia del abuelo, *la fecha de la muerte de éste* era la que determinaba el estado de los derechos sucesorales de las partes. Como el causante había fallecido estando vigentes las Leyes Núms. 446 y 447 de 14 de mayo de 1952 y éstas le concedían al nieto natural la facultad de heredar por representación en las sucesiones testadas e intestadas dictaminamos que la nieta de Don Saurí Tristani le podía heredar por representación.

En *Martínez v. Vda. de Martínez*, supra, se presenta al menor Duilio Martínez, nacido en 1944 e hijo natural del Sr. Luis Martínez, quien fue reconocido en 1946 por su padre, fallecido en 1954. En este caso determinamos que el menor era el heredero forzoso de Don Luis Martínez, a pesar de que a la fecha de su fallecimiento existía un ascendiente legítimo. El fundamento para dicha determinación consistió en que al momento de fallecer el causante ya regía la Ley Núm. 447, *supra*, que excluyó en la herencia testada los derechos hereditarios de los padres legítimos cuando existían hijos naturales reconocidos.

Estos breves ejemplos ilustran prístinamente la norma prevaleciente en nuestra jurisdicción de que los derechos sucesorios de las partes se regulan por la legislación prevaleciente al momento en que fallece el causante.

Ahora bien, ¿cuál era el derecho vigente en el caso de autos al momento de ocurrir la muerte del causante, señor Ujaque Pérez? Los peticionarios y este Tribunal afirman que prevalecía la situación adjudicada por la sentencia de divorcio de 1966 en la que se dictaminó la culpabilidad del causante y la inocencia de la peticionaria. Los recurridos, por su parte, argumentan que prevalecía la situación jurídica creada por la Ley Núm. 101, *supra*; esto es, que al haberse enmendado la ley de divorcio por separación desde 1976, convirtiendo dicha causal en una no culposa, la viuda no tenía derecho a la cuota por no existir un ex cónyuge culpable en ese momento.

Si bien la Sentencia de Divorcio de 18 de marzo de 1966 le confirió a la señora Ortiz el *status* de cónyuge inocente, y al señor Ujaque Pérez el de cónyuge culpable, dicha declaración no podía derrotar el propósito evidente del legislador al adoptar la Ley Núm. 101, *supra*, a los efectos de que en los casos de divorcio por separación ninguno de los cónyuges sería considerado culpable.

Estos cambios en el ordenamiento sucesoral obedecen a las valorizaciones hechas en determinado momento por la Asamblea Legislativa. No cabe duda que ésta tiene la autoridad para eliminar, modificar o alterar ese estado de derecho. *El no reconocerlo privaría a ésta de legislar con efecto inmediato en un área en que tradicionalmente lo ha hecho y lo puede continuar haciendo en el descargo de su función constitucional.*

La Asamblea Legislativa, en ese sentido, modificó el derecho a cuota usufructuaria en los casos de divorcio por separación como parte de un nuevo esquema conceptual que eliminaba el discrimen por sexo proscrito por nuestra Constitución desde 1952.

En España, por ejemplo, bajo el nuevo estado de derecho adoptado en 1981, se dio un paso más allá del dispuesto por nuestra Asamblea Legislativa. Se dispuso que con el divorcio se extinguían no sólo las relaciones económicas entre las partes, sino

también sus relaciones y derechos sucesorios. M. López Alarcón, *El Nuevo Sistema Matrimonial Español,* Madrid, Ed. Tecnos, 1983, pág. 325.

La sentencia de divorcio de 1966 no le adjudicó a la peticionaria un derecho a la cuota usufructuaria, sino una *expectativa* o *potencial* derecho, el cual podía quedar frustrado por varias contingencias. Por ello es que el derecho a la cuota surge únicamente al momento de la muerte del causante. *Ripoll Alzuru v. Rosa Pagán,* supra.

La esperanza o expectativa de que una ley continúe en su forma original no puede ser considerada como derecho adquirido. Conforme expresamos en *Vázquez v. Morales,* 114 D.P.R. 822, 831 (1983):

> *Hemos resuelto que no se le atribuye efecto retroactivo* a una ley cuando el derecho invocado se origina en hechos realizados con posterioridad a su vigencia. *Aguilar v. Vázquez,* 6 D.P.R. 1, 9 (1904). También que la *simple* esperanza o *expectativa* de que una ley siga en su forma original *jamás puede ser considerada como* un derecho adquirido. *Rodríguez v. Miller,* 23 D.P.R. 594, 602 (1916). (Énfasis suplido.)

Cabe señalar que, según la tesis mayormente aceptada por los tratadistas españoles, no se considera que se estén violando *derechos* al aplicar retroactivamente una ley cuando de lo que se trata *es de meras expectativas o de derechos potenciales.* L. Díez-Picazo y A. Gullón, *Sistema de Derecho Civil,* Madrid, Ed. Tecnos, 1982, Vol. I, págs. 128–132; M. Albaladejo, *Compendio de Derecho Civil,* Barcelona, Ed. Bosch, 1989, T. I, Vol. 1, págs. 126–128; F. Lucas Fernández, *Comentarios al Código Civil,* T. I, Vol. I, págs. 74–75; Castán Tobeñas, *op. cit.,* T. I, Vol. 1, págs. 589–593; Espín Cánovas, *Manual de Derecho Civil Español,* Vol. I, 5ta ed., Madrid, Ed. Rev. Der. Privado, 1975, págs. 161–162.

Diego Espín Cánovas ofrece como ejemplo de estos derechos potenciales la expectativa de la herencia según las normas de la sucesión ab intestato. Esta puede verse frustada por la adopción de una ley nueva que limite los llamamientos. Espín Cánovas, *op. cit.,* pág. 162.

Resulta, además, meridianamente claro que el tribunal de instancia tampoco privó a la peticionaria de ningún derecho adquirido, ya que al tiempo en que se decretó su divorcio, el tribunal no le otorgó un derecho concreto a participar de la cuota usufructuaria viudal, sino que meramente le adjudicó la condición de cónyuge inocente. En ese momento tal condición no tenía ningún efecto sucesoral.

A la fecha del fallecimiento del causante (1984), la Ley Núm. 101, *supra*, y su enmienda aclaratoria —contenida en la Ley Núm. 183, *supra*— constituían el estado de derecho aplicable a la controversia a los fines de poder determinar los derechos sucesorios de las partes.

En resumen, el divorcio que rige en Puerto Rico lleva consigo, además de la ruptura completa del vínculo matrimonial, la separación de propiedades y bienes de todas clases entre cónyuges. L. Muñoz Morales, *Derechos Cónyuge Divorciado*, 10 Rev. Jur. U.P.R. 199, 219 (1940); *Tormes Ex parte*, 53 D.P.R. 417 (1938). En el caso específico del divorcio por la causal de separación, el legislador eliminó el derecho a cuota viudal usufructuaria cuando el causante muere luego de la aprobación de las Leyes Núms. 101 de 1976 y 183 de 1979. Estas leyes eliminaron el concepto de culpa de dicha causal para dar vitalidad a nuestra disposición constitucional que prohíbe el discrimen por sexo. La opinión del Tribunal, al sostener lo contrario, trastoca principios constitucionales fundamentales así como del derecho sucesoral, según expuestos en nuestros claros precedentes judiciales. *Ripoll Alzuru v. Rosa Pagán*, supra.

Por todo lo anterior disiento.